J-S29035-21

2021 PA Super 222

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TYRELL BISHOP, | : | |
| | : | |
| Appellant | : | No. 106 EDA 2020 |

Appeal from the PCRA Order Entered December 11, 2019
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001140-2014

BEFORE: PANELLA, P.J., KUNSELMAN, J. and STEVENS, P.J.E.*

OPINION BY: STEVENS, P.J.E.:                    **FILED NOVEMBER 15, 2021**

Appellant Tyrell Bishop appeals from the December 11, 2019, Order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

This Court previously provided the following overview of this case:

> On November 9, 2013, at around 10:50 p.m., Kyree Silver was in the area of 10th and Norris Streets in Philadelphia, where he had a verbal altercation with an unidentified man. Appellant was present at that altercation. As Silver and his friend, Nasir, began to walk down the street, Nasir told Silver, "Hey, bro, you are being followed." The man following them was wearing a white thermal shirt, khaki pants, and Timberland boots. Appellant then yelled to Silver, and Silver turned around and walked into the middle of the street, where Appellant began shooting at Silver. At first, Silver stood in shock, but, after the second shot, he began to run towards an intersection, at which time he was struck by a bullet. Silver nevertheless was able to pick himself up and run two more blocks.

*Former Justice specially assigned to the Superior Court.

Temple University Police Officer Robert Acosta, who had received a radio call reporting a shooting in the area, found Silver and placed him into another officer's patrol car to be transported for medical attention. Silver was taken to Temple University Hospital, where "it was determined that [he] had been shot in his left side, and that the bullet hit his spine."

Officer Acosta then returned to the scene of the crime, where he "noticed someone" inside a building, through an open door, "who was sitting on a chair fitting the doer's clothing," which had been described in the radio call as "tan boots with light color shirt, possibly a thermal." The person then closed the door. Officer Acosta later testified that he "really can't say" whether the person he saw was Appellant, despite being able to recognize Appellant from "see[ing] him around the area."

On November 14, 2013, Silver identified Appellant as the shooter after viewing a photo array. On December 28, 2013, Philadelphia Police executed a search warrant on Appellant's home and recovered "a tan pair of khaki pants, a tan pair of Timberland boots, and mail in the name of Appellant." They arrested Appellant that same day.

Appellant was indicted for the shooting on January 27, 2014, and a jury trial ultimately was scheduled for December 2014. During that interval, Silver received an unsigned handwritten letter addressed to him at his home. The letter was postmarked April 2, 2014, and urged Silver not to testify at trial and to lie if he was asked if he recognized Appellant during a line-up. The Commonwealth later produced transcripts of taped conversations by Appellant with friends and family members in which he appeared to discuss trying to dissuade Silver from testifying.

Prior to trial, the parties engaged in motion practice regarding the Commonwealth's plan to introduce information that it contended was from Appellant's social media accounts. On November 18, 2014, the Commonwealth provided Appellant with a numbered exhibit packet. [The packet was] described by the Commonwealth as screenshots from a Facebook account registered under the name "Traplife Took." The Commonwealth contended that "Traplife Took" was a nickname used by

Appellant and that the exhibits were from Appellant's Facebook account.…

The Facebook messages … contained a number of photographs of Appellant, including one showing him a few blocks from the location of the shooting. [One] contained a message stating: "Neighborhood dangerous,, whole lotta shootas,,,, had to keep a Mac n I ain't talkin bout computers,," (punctuation in original). Another stated, "Gotta 40 n a 9 at da SAME DAMN TIME.. # TEAM BIZZY.. I'm on ma militant shit ..." (capitalization and punctuation in original). [A third] stated: "Death before dishonor,,,, don't even bother.. Take me back to prison I don't kno shit, ya honor..... # snitches get stitches... N I don't like stitches" (punctuation in original). The posting dates of the messages were in May or June of 2012 (about 1 ½ years before the shooting of Silver).

On December 12, 2014, Appellant filed a pre-trial motion *in limine* to prohibit the introduction of any social media evidence, arguing that Appellant's "social media accounts are irrelevant and inadmissible." Appellant stated that "[t]he entirety of the Facebook and Twitter posts are the equivalent of braggadocio and rap lyrics—what Tipper Gore feared in the early 90s." The trial court denied the Motion *in Limine* and allowed the Commonwealth to introduce the social media evidence at trial.

During trial, Silver testified that he saw Appellant follow him and heard Appellant "yell something out." Throughout his testimony, Silver identified Appellant as the individual who shot him, and Silver's testimony was corroborated by a surveillance video that recorded a portion of the incident. During his testimony, Silver identified himself in the video. Also during the trial, Appellant stipulated that he had a prior felony conviction that made it unlawful for him to possess a firearm and that he did not have a license to carry a firearm.

On December 22, 2014, a jury found Appellant not guilty of attempted murder and guilty of the remaining charges enumerated above. On March 9, 2015, Appellant was sentenced to an aggregate term of eighteen to thirty-six years' incarceration.

On March 18, 2015, Appellant filed a motion for reconsideration of his sentence, which the trial court denied on July 17, 2015. On July 27, 2015, Appellant filed a notice of appeal to this Court.

*Commonwealth v. Bishop*, 2017 WL 3225850, at \*1–3 (Pa.Super. 2017) (unpublished memorandum) (brackets, footnotes, and record citations omitted). This Court affirmed his judgment of sentence, and Appellant did not pursue his appeal in the Pennsylvania Supreme Court.

Appellant timely filed a PCRA petition, *pro se*, on February 15, 2018. Following appointment of counsel, Appellant filed an amended PCRA petition on November 20, 2018, and the Commonwealth filed a response on September 9, 2019, urging the PCRA court to dismiss the petition. On October 23, 2019, the PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant did not file a response before the PCRA court.[1] On December 11, 2019, the PCRA court dismissed Appellant's petition.

Appellant timely filed the instant notice of appeal.[2] Thereafter, Appellant filed a concise statement of matters complained of on appeal

---

[1] Appellant instead prematurely filed a notice of appeal with this Court on November 4, 2019, which this Court docketed at 3298 EDA 2019.

[2] Following Appellant's filing of a petition to proceed *pro se*, this Court remanded the appeal at 3298 EDA 2019 for the PCRA court to conduct a hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998). On March 11, 2020, this Court dismissed the appeal at 3298 EDA 2019 as duplicative of the instant appeal. On July 13, 2020, this Court ordered the
*(Footnote Continued Next Page)*

- 4 -

pursuant to Pa.R.A.P. 1925(b), and the PCRA court filed an Opinion pursuant to Pa.R.A.P. 1925(a).

On appeal, Appellant asserts what purports to be one issue, but is actually six (verbatim except re-ordered for dispositional purposes):

> Trial counsel ineffective because he failed to: 1) suppress identification where the identification procedure was overly suggestive and in violation of Appellant's Due Process rights; 2) protect Appellant's Sixth Amendment right to confront Commonwealth witnesses' identification information leading to Appellant's arrest and conviction; 3) call alibi witnesses; 4) impeach a Commonwealth witness with prior arrests and to object and/or impeach a Commonwealth witness after the Commonwealth elicited false testimony from the witness; 5) file a post-verdict motion that the verdict was against the weight of the evidence; and 6) properly investigate and consult with Appellant to prepare an adequate defense.

Appellant's Brief at 2.

We review these issues mindful of our well-established standard of review:

> This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

***Commonwealth v. Hand***, 252 A.3d 1159, 1165 (Pa.Super. 2021). "The PCRA court's factual determinations are entitled to deference, but its legal

---

*(Footnote Continued)* ――――――――――――

PCRA court to conduct a ***Grazier*** hearing in the instant appeal. Before such hearing occurred, Appellant elected to proceed with retained counsel, who entered an appearance in this Court on September 15, 2020.

determinations are subject to our plenary review." ***Commonwealth v. Vinson***, 249 A.3d 1197, 1203 (Pa. Super. 2021). The PCRA court's decision to deny a request for an evidentiary hearing is within the PCRA court's discretion and we will not overturn it absent an abuse of that discretion. ***Hand***, 252 A.3d at 1166.

Appellant's issues on appeal center around his allegation that his trial counsel rendered ineffective assistance. "To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place." ***Commonwealth v. Webb***, 236 A.3d 1170, 1176 (Pa. Super. 2020); ***see also*** 42 Pa.C.S.A. § 9543(a)(2)(ii).

> Counsel is presumed to have been effective. In order to overcome that presumption and prevail on a claim of ineffectiveness, Appellant must establish that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his conduct; and (3) he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that because of the act or omission in question, the outcome of the proceeding would have been different.

***Hand***, 252 A.3d at 1166 (citations omitted). Failure to satisfy any one of the three prongs of the test will result in failure of the entire claim. ***Webb***, 236 A.3d at 1176.

**Failure to File a Motion to Suppress**

In his first issue, Appellant argues trial counsel was ineffective for failing to file a motion to suppress the victim's pre-trial identification of him. Appellant's Brief at 14. Police showed Silver a photographic array with eight photographs which contained photographs of Appellant and seven other individuals. Appellant claims this photographic array was unduly suggestive, unreliable, and violative of due process. *Id.* Specifically, Appellant contends the police should have followed the double-blind procedure he asserts is the department's normal procedure.[3] *Id.* at 15.

That is, Appellant argues that a police officer who was not involved in the investigation should have conducted the photographic array, not Detective Michael Rocks, who was the investigating detective. *Id.* at 15-16. He also contends police should not have told the victim that the suspected perpetrator was one of the individuals in the photographic array. *Id.* at 16.

In addition to his argument regarding the double-blind procedure, Appellant urges us to find significant the existence of a single image of him printed two minutes after the photographic array was printed. *Id.* Appellant implies that the existence of the image in the police department's records indicate the police showed Silver his photograph in the photographic

---

[3] Appellant does not specify when the department purportedly adopted this procedure.

array followed by a separate stand-alone photograph to influence the victim's selection. *Id.*

In considering whether Appellant's arguments have merit, we bear in mind the following:

> Whether an out of court identification is to be suppressed as unreliable, and therefore violative of due process, is determined from the totality of the circumstances. Suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion. Identification evidence will not be suppressed unless the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out more than the others, and the people depicted all exhibit similar facial characteristics.

*Commonwealth v. Mbewe*, 203 A.3d 983, 986-87 (Pa.Super. 2019) (citations and quotation marks omitted).

Upon review of Appellant's original and amended PCRA petitions, we determine that Appellant has waived his argument concerning the double-blind procedure. In his PCRA filings, Appellant argued the procedure was suggestive because the victim had described the perpetrator as having a beard, Appellant did not have a beard, and no one in the photographic array had a beard.[4] Memorandum of Law in Support of Amended PCRA Petition,

---

[4] Appellant abandoned this argument on appeal by not including it in his brief. However, even if we were to construe the due process argument in Appellant's brief to include this claim, it would fail. Due process requires police to assemble an array of photographs of individuals who resemble the

*(Footnote Continued Next Page)*

11/20/2018, at 19. He also included an argument concerning the significance of the single photograph in his file. *Id.*

However, there is no indication in the certified record that he presented his argument regarding the double-blind procedure to the PCRA court for it to consider it in the first instance. Generally, a litigant may not present arguments to this Court which it did not present to the lower court. *See* Pa.R.A.P. 302(a).

Appellant's filing of a petition arguing trial counsel was ineffective for not filing a motion to suppress the photographic array is not enough to preserve the claim because he did not give the PCRA court the opportunity to consider the same argument he now presents on appeal. *See Commonwealth v. Rush*, 959 A.2d 945, 948–49 (Pa.Super. 2008) ("[An] appellant cannot support … claims in this Court by advancing legal arguments different than the ones that were made when the claims were preserved.").

Even if we were to construe Appellant's argument broadly and find it preserved, his bald assertion that the "Philadelphia Police Department detectives have been utilizing [the double-blind procedure] for years" does not establish whether the procedure was used at the time of the

*(Footnote Continued)* ───────────────

suspect, not the description provided by the victim or eyewitness. *Mbewe*, 203 A.3d at 986-87.

- 9 -

photographic array in this case or that a photographic array without use of the procedure offends due process. Appellant's Brief at 15-16.

Furthermore, his commentary upon quotations from the record misconstrue the record in context. Silver merely stated that the exhibit shown to him at trial was "the paper that detective showed me with the people who were suspected to do the shooting at the time," not that Detective Rocks told him anything at the time of the array that was unduly suggestive. N.T., 12/17/2014, at 42. Furthermore, Appellant's assertion that Detective Rocks told the victim that the array was made up of one suspect and seven filler photographs is incorrect based on the record. Detective Rocks used the term "filler" when describing the procedure of assembling the record to include seven others who resembled the suspect, but he never testified that he used that term in front of the victim. N.T., 12/18/2014, at 141.

As for the single photograph, Appellant insists in a one-sentence argument that the presence of the single photograph in the file printed two minutes after the photo array "increase[ed] the probability of misidentification by the victim and suggest[ed] that the Appellant was the shooter." Appellant's Brief 16.

To the extent Appellant is arguing the presence of the photograph in the file *ipso facto* indicates that the police showed it to Silver in a suggestive fashion to persuade Silver to select Appellant as the perpetrator, we agree

with the PCRA court that such argument is speculative. **See** PCRA Court Opinion, 4/9/2021, at 8-9. Appellant does not point to any evidence or testimony in the record supporting his theory. Therefore, this argument fails.

Based on the foregoing, we discern no error or abuse of discretion in the PCRA court's conclusion that Appellant failed to establish merit to his suppression argument. Accordingly, Appellant's ineffective assistance of counsel claim likewise has no merit, and the PCRA court properly dismissed this claim without a hearing. **See Commonwealth v. Epps**, 240 A.3d 640, 645 (Pa.Super. 2020) ("Counsel cannot be found ineffective for failing to raise a baseless or meritless claim.").

## **Failure to Present Police Officer and Protect Right to Confrontation**

Appellant's next argument is centered on his contention that trial counsel should have called police officer Joseph Goodwin to the stand, filed a motion to suppress his testimony, or developed at trial why Appellant was investigated as a suspect. Appellant's Brief at 17.

Detective Rocks began investigating Appellant as a suspect after speaking with Officer Goodwin and testified that he was contacted by Officer Goodwin early in the investigation. He explained that "[b]ased on a conversation I had with Police Officer Goodwin, I developed this defendant as suspect in the shooting." N.T., 12/28/2014, at 143. No further details were provided as to the conversation. Appellant's attorney lodged a hearsay

objection, but the trial court overruled it because Detective Rocks did not offer information as to the nature of the conversation. *Id.*

In his brief, Appellant contends that counsel should have presented Officer Goodwin as a witness because he could have challenged whether his arrest was based upon probable cause. Appellant's Brief at 18. Appellant further argues that he had "a constitutional right to confront Officer Goodwin to explore the particulars regarding the source of the officer's information." Appellant's Brief at 17. He contends that Officer Goodwin's conversation with Detective Rocks was testimonial in nature pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004), and he had the right to cross-examine Officer Goodwin about the conversation and determine why the police developed him as a suspect. Appellant's Brief at 19.

To the extent Appellant is basing his ineffectiveness claim on counsel's failure to present Officer Goodwin as a witness, we bear in mind the following:

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the ineffective assistance of counsel test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

> Prejudice in this respect requires the petitioner to show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. Therefore, the

petitioner's burden is to show that testimony provided by the uncalled witnesses would have been helpful to the defense.

***Commonwealth v. Selenski***, 228 A.3d 8, 16 (Pa.Super. 2020) (quotation marks, citations, and brackets omitted).

In explaining its rejection of Appellant's claim, the PCRA court noted that Appellant "fails to set forth how the testimony of Officer Goodwin would have helped in his defense[.]" PCRA Court Opinion, 4/9/2021, at 9. We agree. Appellant has not established how he was prejudiced by counsel's failure to present and cross-examine Officer Goodwin, much less that Officer Goodwin would have offered information that helped his defense.

Regarding Appellant's vague Confrontation Clause argument, the case he relies upon, ***Crawford***, applies when the prosecution seeks to introduce a testimonial out-of-court statement into evidence against a criminal defendant. ***See generally Crawford, supra***. ***Crawford*** is inapplicable herein because the Commonwealth did not seek to introduce Officer Goodwin's statement at trial. Furthermore, police generated probable cause for Appellant's arrest when the victim identified him in the lineup and when they located clothes in Appellant's home matching the victim's description of the perpetrator's attire. Thus, there is no arguable merit to Appellant's claim and the PCRA court properly dismissed this claim without a hearing. ***See Epps***, 240 A.3d at 645.

**Failure to Present "Alibi" Witness**

- 13 -

Appellant argues that trial counsel was ineffective for failing to call Shenae Graham as a witness.[5] Appellant's Brief at 20-21. Graham, Appellant explains, was present during a verbal altercation between Appellant and Officer Goodwin approximately three months prior to the shooting. Graham was prepared to testify that Officer Goodwin told Appellant "[h]e would put a case on him that would stick and that he will make sure Appellant and his friend Sajjad Hall are put away for a long time" and the "next thing that happens in the projects he will put it on him." *Id.*

We agree with the PCRA court that Appellant failed to establish prejudice by counsel's failure to call Graham. As the PCRA court explained,

> Here, the purported witness … was not an eyewitness to the shooting. She cannot contradict the sworn identification testimony of [Silver] who identified [A]ppellant by both his appearance and the clothes he was wearing on the night of the shooting. Further, Police Officer Robert Acosta testified that on the night of the shooting, he observed someone matching [Silver's] description of the shooter hiding in a house near the scene of the shooting wearing the same tan boots, tan pants and light colored shirt that was heard over police radio. Officer Acosta testified that this person, whom he was later able to identify as [A]ppellant, slammed the door closed when he observed the officer. Upon executing a search warrant at [A]ppellant's house, the tan Timberland boots and tan pants as described by [Silver] as worn by his assailant were recovered.
>
> Therefore, given the identification testimony of both [Silver] and Officer Acosta, and the physical evidence, [A]ppellant is unable to show that there was a reasonable

_____

[5] Although Appellant refers to Graham as an alibi witness, he offers no argument that she could have provided an alibi for him on the night in question.

probability that he would have been found not guilty of any of the charges, including aggravated assault, had Shenae Graham testified on his behalf.

PCRA Court Opinion, 4/9/2021, at 11 (citations omitted).

We agree with the PCRA court's analysis except for its reliance upon Officer Acosta's testimony. This Court noted in Appellant's direct appeal that Officer Acosta acknowledged during his testimony that he "'really can't say" whether the person he saw was Appellant, despite being able to recognize Appellant from 'see[ing] him around the area.'" *Bishop*, 2017 WL 3225850, at \*1 (citations omitted).

However, Appellant has not explained how Graham's testimony would have changed the outcome at trial considering the victim's identification of Appellant and the matching clothes recovered from Appellant's house. Additionally, as we described on his direct appeal, Silver's identification was corroborated by a video recording of part of the altercation, and the Commonwealth also introduced transcripts of recordings by Appellant encouraging family and friends to prevent the Silver from testifying, which indicated his consciousness of guilt. *Bishop*, *supra* at \*7 (describing the properly admitted evidence of guilt as "overwhelming").

Because Appellant failed to establish prejudice, the PCRA court did not err or abuse its discretion in dismissing Appellant's claim relating to the failure to call Graham. *See Hand*, 252 A.3d at 1166.

**Failure to Impeach Silver**

- 15 -

Several months prior to trial, the victim, Silver, received Accelerated Rehabilitation Disposition after being charged with forgery, theft by unlawful taking, theft by deception, receiving stolen property, and executing documents by deception. N.T., 12/17/2014, at 43-44, 73-77, 80-83. The Commonwealth asked Silver about the disposition during direct examination and Appellant's trial counsel cross-examined Silver about it. *Id.*

On appeal, Appellant argues counsel failed to investigate Silver's crimes and properly impeach Silver regarding the crimes. Appellant's Brief at 21-22. He also contends counsel should have requested a jury instruction on *crimen falsi*. *Id.*

According to Appellant, Silver "provided knowingly false testimony" when Silver testified that after applying online for a warehouse trucking job, he received and cashed a sign-on bonus check that unbeknownst to him was fake. Appellant's Brief at 21. Appellant attaches one page of what he purports is a criminal complaint against Silver from the incident, which states Silver attempted to cash a check in the name of Jacqueline Boyette. *Id.* at 21, C-1.

Appellant did not present this criminal complaint to the PCRA court in the first instance. Instead, he baldly argued Silver was being untruthful, resulting in the PCRA court's rejection of his claim. *See* PCRA Court Opinion, 4/9/2021, at 12 ("However, [A]ppellant fails to provide to this Court any evidence that [Silver] was being untruthful."). We cannot consider evidence

that *dehors* the record or an argument that was not presented to the PCRA court in the first instance. *See* Pa.R.A.P. 302(a); *Rush*, 959 A.2d at 949. Likewise, Appellant has waived his argument that counsel was ineffective for not requesting a jury instruction on *crimen falsi* as he presents this argument for the first time on appeal. *Id.*

## Failure to Raise a Weight-of-the-Evidence Claim

Appellant argues trial counsel rendered ineffective assistance by failing to file a post-trial motion raising a challenge to the weight of the evidence. To support this claim, Appellant in essence reiterates two of his prior ineffectiveness claims by asserting that the trial court would have granted him a new trial if counsel had called Officer Goodwin as a witness to determine why police developed Appellant as a suspect and if counsel had filed a motion to suppress the allegedly suggestive photographic array. Appellant's Brief at 11-12. These arguments presuppose the success of these claims, which we have already rejected.

Appellant's remaining arguments discount Silver's identification of him because he claims Silver admitted to smoking marijuana prior to the incident, and Silver did not identify Appellant until several days after the incident. *Id.*

The PCRA court offered the following analysis of this claim:

> At trial, Silver testified repeatedly that he saw Appellant looking at him and his friend Nasir as they were walking away and that he heard Appellant yell at them about engaging in a

- 17 -

fight. He further testified that he looked up and saw Appellant pull out a gun and fire shots at him. Silver further testified that the area was well lit and was able to give the police a description of his assailant which was corroborated by video surveillance.

Regarding his use of marijuana that day, Silver testified that it was several hours prior to the shooting and that he was not under its effects at the time of the shooting nor when he gave his statement or identification of Appellant to the police. The jury sitting as factfinder found this evidence to be credible and compelling and therefore convicted Appellant of all charges. Determinations of credibility are within the exclusive province of the jury. ***Commonwealth v. Charlton,*** 902 A.2d 554, 563 (Pa. Super. 2006).

PCRA Court Opinion, 4/9/2021, at 5-6 (name designations altered). The court also noted its belief that any challenge to weight lacked merit. ***Id.*** Accordingly, it determined that Appellant's ineffective assistance of counsel claim based upon weight failed for lack of merit. ***Id.*** It also concluded Appellant was unable to prove prejudice, as the outcome of the proceedings would not have been different had Appellant raised this claim. ***Id.***

When assessing whether the PCRA court abused its discretion in concluding Appellant's claim failed on the merits and prejudice prongs we are mindful that a defendant must raise a claim that the evidence is against the weight of the verdict with the trial court by oral or written motion prior to sentencing, or in a post-sentence motion. Pa.R.Crim.P. Rule 607(a). A motion asserting that the verdict was against the weight of the evidence is addressed to the discretionary power of the court. ***Commonwealth v. Widmer***, 744 A.2d 745, 751–52 (Pa. 2000).

- 18 -

"A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Id.* "A new trial is warranted in this context only when the verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Smith*, 181 A.3d 1168, 1186–87 (Pa. Super. 2018) (citations omitted).

The jury as finder of fact is free to believe all, none, or some of the evidence and to determine the credibility of witnesses. *Commonwealth v. Delmonico*, 251 A.3d 829, 837 (Pa. Super. 2021). It is the exclusive province of the jury to resolve contradictory testimony and assess credibility. *Id.*

We discern no abuse of discretion in the PCRA court's assessment that a weight claim neither had merit nor would have changed the outcome because the jury relied upon Silver's ability to get a good look at the perpetrator and believed his testimony that the marijuana he consumed hours before the incident did not impair his judgment or recall. These are the types of determinations that are well within the jury's province to determine. *See Delmonico*, 251 A.3d at 837.

**Failure to Investigate and Consult**

In Appellant's final argument, he asserts that his trial counsel's assistance was ineffective because counsel failed to investigate the case

properly and to consult with Appellant to prepare an adequate defense. Appellant's Brief at 13. Appellant specifically takes issue with counsel's failure "to investigate and/or better develop" these areas: "trial strategy;" Silver's prior conviction for impeachment purposes; an unspecified motion *in limine*; calling Graham as a witness to testify to the threats Officer Goodwin made to Appellant; and the information Officer Goodwin provided to Detective Rocks. *Id.* Appellant also accuses trial counsel of not reading his letters, not consulting with him in advance, and overall failing to investigate the case. *Id.*

Appellant's allegations are merely a rehashing of his prior ineffectiveness claims that we have rejected *supra*, along with a few new bald and vague allegations about trial strategy and an unspecified motion *in limine*. Thus, Appellant fails to establish prejudice from counsel's alleged failure to consult and investigate. *See Commonwealth v. Elliott*, 80 A.3d 415, 432 (Pa. 2013) (holding a defendant must establish that he was prejudiced by trial counsel's failure to meet with him in order to prepare adequately for trial). Appellant sets forth no "beneficial information or issues that counsel should have presented had he been prepared adequately, which would have changed the outcome of the trial." *Id.* Accordingly, this claim fails.

**Conclusion**

Based on the foregoing, we affirm the PCRA court's dismissal of Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2021