J-S39018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CURTIS C. SIMMONS | : | |
| | : | |
| Appellant | : | No. 176 EDA 2025 |

Appeal from the PCRA Order Entered December 9, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005973-2019

BEFORE:  STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED APRIL 15, 2026**

Appellant Curtis C. Simmons appeals from the order dismissing his Post-Conviction Relief Act[1] (PCRA) petition after an evidentiary hearing.  On appeal, Appellant claims that the PCRA court erred by dismissing his claims that trial counsel was ineffective for eliciting allegedly prejudicial testimony from one of the complaining witnesses, failing to introduce evidence of police misconduct in an unrelated case, and failing to introduce allegedly exculpatory video evidence.  After review, we affirm.

The PCRA court set forth the facts of this case as follows:

In April 2017, G.L. was 24 years old, addicted to fentanyl and cocaine, and working as a prostitute in the Kensington area of Philadelphia.  In the early morning hours of April 19, 2017, while working near the bridge at the intersection of Kensington Avenue and Pacific Street, G.L. saw [Appellant] pull up near her in a silver truck with tinted windows.  [Appellant] asked G.L. to get in the

_____

[1] 42 Pa.C.S. §§ 9541-9546.

truck. G.L. entered the truck's front passenger seat, and [Appellant] started driving.

After driving to a nearby location, [Appellant] pulled over and told G.L. to get in the backseat. When G.L. refused, [Appellant] climbed to the backseat and then pulled G.L. by her hair to the backseat. [Appellant] told G.L. that he would kill her if she screamed. [Appellant] began taking G.L.'s pants off and then put his penis in G.L.'s anus. G.L. started crying, and [Appellant] said he would kill her if she "didn't shut up." When G.L. turned her head, she saw [Appellant] with a gun. [Appellant] put the top part of the gun into G.L.'s vagina and told her that he was going to kill her. [Appellant] then put his penis in G.L.'s mouth until he ejaculated. [Appellant] told G.L. to swallow his semen, but G.L. was able to keep some of [Appellant's] semen in her mouth. [Appellant] then climbed back into the front seat and began driving the car. [Appellant] told G.L. to get dressed and said, "I'm still going to pay you. It was all a joke. I just like to do it like that." G.L. said okay and kept quiet. G.L. never consented to any of the sexual activity with [Appellant].

[Appellant] pulled over by a ramp and told G.L. to get out. G.L. exited the truck, and [Appellant] drove away without giving G.L. any money. G.L. then spit [Appellant's] semen into a napkin. An analysis of the semen in the napkin revealed a match to [Appellant's] DNA.

PCRA Ct. Op., 2/25/25, at 3-4 (citations omitted and some formatting altered).

On February 18, 2022, a jury convicted Appellant of sexual assault.[2,3] The trial court sentenced Appellant to forty-five to ninety months'

---

[2] 18 Pa.C.S. § 3124.1.

[3] Appellant was acquitted of rape, involuntary deviate sexual intercourse, and possession of an instrument of crime. *See* PCRA Ct. Op., 2/25/25, at 1 n.1. Additionally, at the same trial, Appellant was acquitted of rape, involuntary deviate sexual intercourse, sexual assault, and strangulation in relation to a separate complaining witness, K.D., at docket number 4906 of 2019. *See id.*; N.T., 2/18/22, at 18-19.

incarceration followed by two years of probation on May 16, 2022. Appellant filed a post-sentence motion, which the trial court denied on September 18, 2023.[4] Appellant did not file a direct appeal.

On January 16, 2024, Appellant filed the instant PCRA petition. The PCRA court held an evidentiary hearing on the issues raised in Appellant's PCRA petition on August 23, 2024. The PCRA court dismissed Appellant's PCRA petition on December 9, 2024.

Appellant filed a timely notice of appeal. Both the PCRA court and Appellant complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Whether trial counsel provided . . . ineffective assistance of counsel in failing to object and move for a mistrial when one of the two complainants told the jury that she heard that other prostitutes had been raped by a man who matched [Appellant's] description.

2. Whether trial counsel should have introduced evidence that the assigned detective, who was responsible for collecting the alleged DNA evidence from the first of two complainants, had been suspended and transferred to a different unit for fabricating evidence and lying about it.

3. Whether trial counsel was ineffective in failing to introduce video evidence which would have shown that the complainant's story was much less likely to be true.

Appellant's Brief at 4 (some formatting altered).

_____

[4] On March 14, 2023, Appellant filed a PCRA petition seeking the reinstatement of his post-sentence motion and appellate rights *nunc pro tunc*. **See** PCRA Petition, 3/14/23. The PCRA court granted Appellant's petition and reinstated Appellant's post-sentence motion and appellate rights on May 23, 2023. **See** PCRA Ct. Order, 5/23/23.

- 3 -

In reviewing the denial of a PCRA petition, our standard of review

is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa. Super. 2019)

(citations omitted and some formatting altered). Further, we presume that a

defendant's counsel was effective. ***See Commonwealth v. Turetsky***, 925

A.2d 876, 880 (Pa. Super. 2007). This Court has explained that

to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his [or her] action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his [or her] client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he [or she] may have taken.

- 4 -

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

*Sandusky*, 203 A.3d at 1043-44 (citations omitted and some formatting altered).

## Prejudicial Testimony Claim

In his first claim, Appellant argues that trial counsel was ineffective for failing to object or request a mistrial after "one of the complainants told the jury that she heard that other prostitutes had been raped by a man who matched [Appellant's] description." Appellant's Brief at 20-42. Specifically, Appellant argues that trial counsel was ineffective for eliciting "hearsay evidence that [Appellant] raped other prostitutes on prior occasions." *Id.* at 21. Appellant contends that "this hearsay prior bad acts evidence . . . was absolutely devastating to the defense." *Id.* at 28. Appellant claims that the presentation of this testimony resulted in the jury being "far more inclined to find [Appellant] guilty of *something* just because of the fact that he had been accused of rape by two women in the courtroom and other unknown women outside of it." *Id.* at 29 (emphasis in original). Appellant contends that this testimony was inadmissible, that trial counsel admitted at the evidentiary hearing that she did not have a strategic reason behind eliciting this

testimony, and that Appellant was prejudiced because "he was convicted of a charge which did not really make sense in light of the testimony of the two complainants" because the "hearsay testimony led to the jury concluding it should convict [Appellant] of something based not on the admissible evidence but the number of uncorroborated, unsubstantiated allegations." *Id.* at 37 (some formatting altered).

> The PCRA court explained that
>
> it was undisputed that trial counsel had no strategic reason for eliciting the hearsay testimony in question. However, . . . there is not a reasonable probability that the jury's verdict would have been different if the jury had not heard the hearsay testimony elicited from K.D.
>
> [T]he jury found [Appellant] not guilty with regard to all charges related to K.D., indicating that the jury did not credit K.D.'s trial testimony. [Further,] the record indicates that trial counsel successfully undermined K.D.'s credibility in part by highlighting that K.D. refused to admit she was a prostitute and, at the same time, claimed she spoke with other prostitutes who warned her about a person who had been assaulting other prostitutes. . . . [I]n the end, it appears that the hearsay testimony erroneously elicited from K.D. was subsequently used by trial counsel in an effective way that helped lead to acquittals on charges related to K.D.
>
> [Additionally,] the jury clearly credited G.L.'s testimony describing defendant's sexual assault against her[. Therefore, the PCRA concluded] that there is not a reasonable probability that the jury's verdict would have been different if the jury had not heard the hearsay testimony elicited from K.D. Because the court's findings are fully supported by the record, no relief is due.

PCRA Ct. Op., 2/25/25, at 7-8 (some formatting altered, citations omitted).

After review of the record, we conclude that the PCRA court's decision is supported by the record and free of legal error. *See Sandusky*, 203 A.3d

at 1043-44.  Initially, we note that we disagree with the PCRA court's legal conclusion that trial counsel did not have a reasonable strategic basis for eliciting the testimony in question.  ***See id.***; ***see also Commonwealth v. Pridgen***, 305 A.3d 97, 101 (Pa. Super. 2023) (stating that "this Court may affirm a PCRA court's order on any legal basis" (some formatting altered and citation omitted)).  Despite trial counsel's claim at the evidentiary hearing that she did not have a reason to elicit the challenged testimony, the record reflects that trial counsel effectively used this testimony in her closing argument to attack the credibility of K.D.[5]  ***See*** N.T., 2/15/22, at 33-34.  Accordingly, trial counsel had a reasonable strategic basis for eliciting the challenged testimony. ***See Sandusky***, 203 A.3d at 1043-44; ***see also Commonwealth v. Washington***, 927 A.2d 586, 606 (Pa. 2007) (stating that "counsel's stewardship may be deemed effective if any reasonable basis for his or her actions is apparent from the record" (some formatting altered)); ***cf Commonwealth v. Reed***, 645 A.2d 872, 881 (Pa. Super. 1994) (finding that counsel had a reasonable basis for not objecting to otherwise inadmissible hearsay because he utilized the testimony in presenting his case).

Additionally, Appellant has not shown prejudice.  ***See Sandusky***, 203 A.3d at 1043-44.  As to Appellant's argument that the prejudice he suffered was apparent because the verdict was inconsistent and did not make sense, it is well established that "inconsistent verdicts are permissible," that

_____

[5] As noted above, Appellant was acquitted of all of the charges related to K.D.

inconsistent verdicts "are not considered mistakes and do not constitute a basis for reversal," and that, as long as "there is sufficient evidence to support the verdicts, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies." **Commonwealth v. Conner**, 635 WDA 2025, 2026 WL 114479, at *6 n.3 (Pa. Super. filed Jan. 15, 2026 ) (unpublished mem.) (some formatting altered and citations omitted).[6]  Here, G.L.'s testimony alone established that Appellant committed sexual assault against G.L.  **See** R.R. 226-231 (N.T., 2/11/22, at 52-72);[7] **see also** 18 Pa.C.S. § 3124.1 (stating that "a person commits [sexual assault] when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent"); **Commonwealth v. Cramer**, 195 A.3d 594, 602 (Pa. Super. 2018) (defining sexual assault and stating that "the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses"(citation omitted)).

_____

[6] **See** Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

[7] We note that the notes of testimony from February 11, 2022, are not included as part of the certified record, but they are included as part of Appellant's reproduced record.  The Commonwealth did not object to the accuracy of those notes of testimony.  Therefore, because "their veracity is not in dispute, we rely on the copy contained within the reproduced record." **See C.L. v. M.P.**, 255 A.3d 514, 518 n.3 (Pa. Super. 2021) (*en banc*) (citation omitted); **see also Commonwealth v. Brown**, 52 A.3d 1139, 1145 n.4 (Pa. 2012) (holding that an appellate court can consider a document that only appears in the reproduced record when "the accuracy of the reproduction has not been disputed" (citation omitted)).

Moreover, as the PCRA court notes, Appellant was acquitted of all of the charges relating to K.D. and all but one of the charges relating to G.L. **See** PCRA Ct. Op., 2/25/25, at 7-8; **see also** N.T., 2/18/22, at 18-22. When prior bad acts evidence is admitted but a jury acquits a defendant on some charges and convicts on other charges, this Court has previously concluded that the mixed verdict "demonstrate[s] that the jury was not improperly influenced by [prior bad acts] evidence; and, instead, shows that the jury considered all of the evidence presented at trial and rendered a verdict it considered appropriate in light of the evidence." **Commonwealth v. Stevenson**, 1673 EDA 2017, 2019 WL 1975920, at *4 (Pa. Super. filed May 3, 2019) (unpublished mem.); **see also Commonwealth v. Williams**, 959 A.2d 1272, 1283 (Pa. Super. 2008) (stating that a mixed verdict "shows that [the jury] carefully considered and weighed all of the evidence for each specific charge and against each specific victim"). Accordingly, no relief is due.

## Police Misconduct Claim

Appellant's second claim is that "trial counsel provided the ineffective assistance of counsel by failing to introduce evidence that [Detective Conn, who was the assigned detective in the G.L. case,] had been suspended and transferred out of the Special Victims Unit for fabricating evidence and lying about it [in an unrelated case]." Appellant's Brief at 43. Appellant claims that Detective Conn was critical to the investigation because he interviewed G.L., wrote her statement to police, and handled DNA evidence. **See id.** at 47. Appellant claims that trial counsel should have used Detective Conn's history

of misconduct as "impeachment evidence . . . to discredit the police department's investigation and [the] validity of the DNA evidence." ***Id.*** (citation omitted). Appellant claims that "there is virtually no scenario under which [trial] counsel could have had a reasonably strategic basis for failing to call Detective Conn as a witness to discredit the entire investigation." ***Id.*** at 48. Appellant further claims that he was prejudiced because presenting the evidence of the detective's misconduct "would have been impeachment evidence against at least the second most important potential witness, the investigator who had supposedly interviewed the complainant for which [Appellant] was convicted and likely would have taken the questionable DNA evidence into police custody." ***Id.*** at 50-51.

This court has previously stated that:

When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the ineffective assistance of counsel test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

**Prejudice in this respect requires the petitioner to show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case.** Therefore, the petitioner's burden is to show that testimony provided by the uncalled witnesses would have been helpful to the defense.

***Commonwealth v. Bishop***, 266 A.3d 56, 65 (Pa. Super. 2021) (citation omitted andemphasis added).

- 10 -

Here, the PCRA court stated:

> With respect to [Appellant's] claim relating to the disciplinary record of Detective Conn, th[is] court rendered the following findings of fact and conclusions of law. Th[is] court found that the Commonwealth properly disclosed information about Detective Conn's citation for misconduct, which occurred more than two years after Detective Conn interviewed G.L. in the instant case. Noting that Detective Conn did not testify at trial, th[is] court concluded that trial counsel's failure to seek to introduce evidence regarding Detective Conn's misconduct did not result in prejudice to [Appellant] because there is not a reasonable probability that the result of the trial would have been different if trial counsel had sought to introduce the evidence.
>
> Th[is] court further concluded that there is not a reasonable probability that the DNA evidence would have been excluded based on Detective Conn's misconduct in an unrelated case two years after his participation in the investigation relating to the instant case. Th[is] court explained that [Appellant] had not offered any evidence to indicate that Detective Conn had committed any misconduct in the instant case and that the record showed that the Commonwealth was able to establish the chain of custody for the DNA evidence without calling Detective Conn to testify.
>
> Th[is] court also noted that [Appellant] himself admitted at trial that he had engaged in oral sex with G.L. but claimed that the sexual activities with G.L., as well as with K.D., were consensual. Th[is] court observed that the jury clearly credited G.L.'s testimony over that of [Appellant] on the issue of consent and concluded that there is no reasonable probability that the result would have been different if trial counsel had introduced evidence of the non-testifying detective's misconduct in an unrelated case in an effort to challenge the collection of the DNA evidence.

PCRA Ct. Op.,2/25/25, at 9-10 (some formatting altered).

After reviewing the record, we conclude that the PCRA court's decision is supported by the record and free of legal error. *See Sandusky*, 203 A.3d at 1043-44. As the PCRA court noted, Appellant has not proffered any

evidence that Detective Conn committed misconduct in his case. While Appellant claims that calling and impeaching Detective Conn would have been instrumental in attacking the credibility of the investigation, impeachment of Detective Conn would not have been beneficial under the circumstance of Appellant's case. **See Bishop**, 266 A.3d at 65. As Appellant notes, Detective Conn was involved in the chain of custody of a DNA sample recovered from G.L. and took G.L.'s statement. **See** PCRA Petition, 1/16/24, at Exh. E (Interview of G.L.); PCRA Petition, 1/16/24, at Exh. F (Property Receipt). However, impeaching Detective Conn regarding the collection of DNA would not have been beneficial given that Appellant's defense at trial was that he had consensual sexual relations with G.L. **See** N.T., 2/14/22, at 157-70. Therefore, the presence of his DNA was not at issue during trial.[8]

---

[8] We note that in his reply brief Appellant claims that trial counsel was ineffective for failing to raise Detective Conn's unrelated misconduct at the suppression hearing regarding the DNA evidence and that, "[h]ad she done so, the evidence may not have been admitted at all, or the evidence would have been of questionable value because of the potential taint." Appellant's Reply Brief at 5-6. Appellant continues that "because the DNA evidence came in, Appellant **had** to testify" and that the introduction of the DNA evidence meant he was left with "two possible defenses - either the sexual contact was consensual, which provided a non-criminal explanation for the presence of the DNA, or the DNA evidence was not properly handled, and the sexual contact did not occur." **See id.** (emphasis in original). However, a review of the record shows that Appellant did not raise this argument in his PCRA petition and, instead, raised it for the first time in his post-hearing brief. **See** PCRA Petition, 1/16/24, at 26-34; Post-Hearing Brief, 10/1/24, at 8. Since this argument was not included in Appellant's PCRA petition or a court authorized amended petition, we find it waived on appeal. **See Commonwealth v. Fears**, 250 A.3d 1180, 1194 (Pa. 2021); **see also** N.T. Evidentiary Hr'g, 8/23/24, at 36 (reflecting that the PCRA court left it to PCRA counsel's

*(Footnote Continued Next Page)*

Further, impeaching Detective Conn regarding his interview of G.L. would not have been beneficial to Appellant's case because G.L. testified consistently with her statement and did not allege in any way that her statement was fabricated or otherwise improperly influenced by Detective Conn. *Compare* R.R. 226-245 (N.T., 2/11/22, at 50-128) *with* PCRA Petition, 1/16/24, at Exh. E (Interview of G.L.).

Accordingly, we conclude that the PCRA court's decision to reject Appellant's claim that trial counsel was ineffective for failing to call Detective Conn was supported by the record and free of legal error because Appellant did not suffer prejudice as the impeachment of Detective Conn would not have been beneficial to Appellant's case. *See Sandusky*, 203 A.3d at 1043-44; *Bishop*, 266 A.3d at 65.

---

discretion whether to file "additional briefing **or** [an] amended petition" (emphasis added)).

In any event, as the PCRA court notes, since the Commonwealth was able to establish chain of custody of the DNA sample without Detective Conn's testimony, his misconduct in unrelated cases would have gone to the weight and not the admissibility of the DNA evidence. *See Commonwealth v. Soto*, 202 A.3d 80, 101-02 (Pa. Super. 2018) (stating that a police officer's prior misconduct in unrelated cases would go to the weight and not admissibility of physical evidence, where the Commonwealth was able to establish authenticity without the officer's testimony). Since Appellant conceded to having sexual relations with G.L. during his testimony, calling Detective Conn to testify at trial about his unrelated misconduct would not have been beneficial to Appellant's case. *See Bishop*, 266 A.3d at 65.

- 13 -

**Surveillance Footage Claim**

Appellant's final claim is that trial counsel was ineffective for "failing to play surveillance footage for the jury which had been provided in discovery." Appellant's Brief at 55. Specifically, Appellant contends that the video rebutted G.L.'s testimony because it showed a silver truck in the area where G.L. stated that the sexual assault occurred but that the silver truck was not there at the same time that G.L testified that the assault occurred, the area is not secluded, and the windows were not partially open as G.L. had testified. *See id.* at 56-59. Further, Appellant contends that, because it did not portray the inside the vehicle or any movement inside the vehicle, the video did not "suggest[] that a violent gunpoint sexual assault [was] taking place inside of the truck." *Id.* at 56.

Here, the PCRA court stated:

With respect to [Appellant's] claim pertaining to trial counsel's decision not to play the video in question, th[is] court concluded that trial counsel's decision was reasonably designed to advance [Appellant's] interests, noting that the video had minimal, if any, evidentiary value and that playing the lengthy video of the truck simply sitting there parked on the street would have tested the jurors' patience. The "evaluation of counsel's performance is . . . highly deferential, and the reasonableness of counsel's decisions cannot be based upon the distorting effects of hindsight." *Commonwealth v. Mason*, 130 A.3d 601, 647 (Pa. 2015) (quoting *Commonwealth v. Rega*, 933 A.2d 997, 1025-26 (Pa. 2007)).

Th[is] court further concluded that there is no reasonable probability that the result of the trial would have been different if trial counsel had played the video, given that there was little, if any, reason to believe that anything shown in the video would have undermined the complainant's testimony. This is especially

so because the video shows a time period ( 10:43 p.m. to 11:05 p.m.) that is at least an hour earlier than the time identified by G.L. as the time of the assault.

PCRA Ct. Op., 2/25/25, at 12-13 (some citations omitted and some formatting altered).

After our review of the record, we conclude that the PCRA court's decision to dismiss this claim is supported by the record and free of legal error. *See Sandusky*, 203 A.3d at 1043-44. The record reflects that trial counsel had a reasonable strategic basis for not presenting the video. At the evidentiary hearing, trial counsel testified that she did not use the video because she did not believe the video added anything to the case. N.T., 8/23/24, at 26. Specifically, she explained that, because the video did not show anything happening and there was no allegation that Appellant used such force that the truck would be moving, she was concerned that the jurors would not have the patience for the video, which ultimately did not show anything happening. *See id.* at 26-27. Appellant concedes that "it is not possible to see completely into the truck" in the video and that "there is no movement from the truck or anything on the video which suggests that a violent gunpoint sexual assault is taking place inside of the truck." Appellant's Brief at 56.

Additionally, the record reflects that Appellant did not suffer prejudice from trial counsel's decision to forgo playing the video. At trial, the Commonwealth proceeded with sexual assault, rape, involuntary deviate sexual intercourse, and PIC charges against Appellant in relation to G.L. *See*

R.R. 215 (N.T., 2/11/22, at 5-6)  However, Appellant was only convicted of sexual assault in relation to G.L.  *See* N.T., 2/18/22, at 19-21.  Based upon the verdict, it is apparent that the jury rejected G.L.'s testimony about Appellant's possession of a handgun during the assault and his use of the handgun or force during the assault and, instead, only credited G.L.'s testimony regarding her lack of consent.  We do not believe that a video in which "it is not possible to see completely into the truck" that also shows "no movement from the truck" would be probative to undermining G.L.'s testimony regarding her lack of consent or Appellant's conviction for sexual assault.  *See Cramer*, 195 A.3d at 602 (stating "sexual assault [occurs] when the defendant engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent . . . it is well established that resistance to sexual assault is not required to sustain a conviction (some formatting altered and citations omitted)).  Since the video could not undermine G.L.'s testimony regarding her lack of consent, Appellant was not prejudiced by trial counsel's decision to forgo playing the video.  Accordingly, the PCRA court's decision to reject Appellant's claim is supported by the record and free of legal error.  *See Sandusky*, 203 A.3d at 1043-44.

For the reasons stated above, we conclude that the PCRA court's dismissal of Appellant's PCRA petition was supported by the record and free of legal error.  No relief is due.

Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>4/15/2026</u>