J-S18037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RASHAWN J. WILLIAMS | : | |
| | : | |
| Appellant | : | No. 1482 MDA 2021 |

Appeal from the PCRA Order Entered October 27, 2021
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0001412-2014

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED AUGUST 17, 2022**

Rashawn J. Williams (Appellant) appeals from the order entered in the Lycoming County Court of Common Pleas dismissing his first petition for collateral relief filed pursuant to the Post Conviction Relief Act (PCRA).[1] He seeks relief from the judgment of sentence of an aggregate term of life imprisonment imposed following his jury conviction of first-degree murder[2] and related charges for the June 2014 shooting death of Aaron Lowry (the victim). On appeal, Appellant argues the PCRA court erred when it denied his claims that trial counsel provided ineffective assistance by: (1) failing to call eyewitness Sheriah Worthy to testify and support his claim of self-defense; (2) failing to present testimony from an expert toxicologist to explain that the

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. § 2502(a).

level of drug and alcohol intoxication in the victim's system would have caused the victim to act aggressively; and (3) failing to properly advise Appellant regarding the Commonwealth's pretrial offer of a guilty plea to third-degree murder. For the reasons below, we affirm.

The relevant facts underlying Appellant's conviction were summarized by a panel of this Court on direct appeal:

> The testimony at trial established that [in the early morning hours of June 1, 2014,] Archie Bell and the victim exited Lamplight Hookah Lounge [in Williamsport, Pennsylvania,] and observed Appellant engaged in an altercation with Sh[e]riah Worthy, a woman Mr. Bell had danced with earlier that evening and who was the mother of Appellant's child. Mr. Bell described Ms. Worthy as having a "terrified" look on her face as she backed away from Appellant. Mr. Bell and the victim ran in the direction of Appellant; Mr. Bell was behind the victim and was close enough that he "could have rested [his] hand on" the victim's shoulder. When they were within an "arm's length" of Appellant, Appellant shot the victim. Mr. Bell testified that Appellant "put the gun in my face, told me to back up or he would give me one, too." At that point, Appellant fled in a car that was parked around the corner, and the victim, bleeding from his nose and mouth, collapsed on the pavement as he tried to escape.

***Commonwealth v. Williams***, 176 A.3d 298, 307 (Pa. Super. 2017) (record citations omitted), *appeal denied*, 22 MAL 2018 (Pa. June 19, 2018). After the shooting, Appellant fled to High Point, North Carolina, where he was subsequently apprehended on June 6, 2014.[3]

_____

[3] When the officers first attempted to apprehend him in North Carolina, Appellant fled his apartment into a nearby wooded area. ***See Williams***, 176 A.3d at 304. He was pursued by a police canine, who eventually bit and injured him. ***Id.***

- 2 -

Appellant was extradited to Pennsylvania, where he was charged with criminal homicide, aggravated assault (two counts), simple assault, persons not to possess firearms, carrying a firearm without a license, possessing an instrument of crime, terroristic threats, and flight to avoid apprehension.[4] He was represented by lead counsel[5] William Miele, Esquire, and co-counsel Nicole Spring, Esquire, both from the Lycoming County Public Defender's Office. Prior to trial, the Commonwealth offered Appellant an open guilty plea to the charge of third-degree murder. *See* N.T. PCRA H'rg at 31. After consultation with counsel, Appellant rejected the plea. *Id.* at 32-33. In an email to the Commonwealth's attorney, Attorney Miele stated that Appellant "would consider a plea" to voluntary manslaughter and persons not to possess firearms. *See* Email from Attorney Miele to Commonwealth, 3/4/16.[6] No further plea offer was forthcoming by the Commonwealth.

The case proceeded to a jury trial beginning on April 11, 2016. Appellant claimed he acted in self-defense. He testified that he was having a conversation with Ms. Worthy outside of the Hookah Lounge when a man

---

[4] *See* 18 Pa.C.S. §§ 2501(a), 2702(a)(1) and (4), 2701(a)(3), 6105(a)(1), 6106, 907(b), 2706(a), and 5126(a), respectively.

[5] *See* N.T. PCRA H'rg, 9/29/21, at 24. Attorney Spring testified that, following trial, she was sole appellate counsel prior to the PCRA proceedings. *Id.*

[6] Attorney Spring attached a copy of this email to her certification of proffered testimony submitted prior to the PCRA hearing. *See* Attorney Spring's Certification of Proffered Testimony Pursuant to Pennsylvania Rule of Criminal Procedure 902(A)(15) and 42 Pa.C.S. Section 9545(d)(1), 12/10/20.

- 3 -

approached him from behind and "punched . . . the right side of his face." N.T., 4/15/16, at 57-58. He stated he then "immediately turned, . . . swung, and then . . . pushed the individual[, who] stumbled back." *Id.* at 58. Appellant testified he then "felt another punch to the left side of [his] face, and before [he could] see what was going on[, he] was grabbed from behind by the neck and the collar of [his] shirt." *Id.* He claimed the person who "grabbed" him was "rag-dolling" him, while the other man "continued to swing[.]" *Id.* Appellant testified he then "heard something to the effect[ ] of, I'm going to kill you," and saw the person whom he had pushed reach in his pocket. *Id.* at 59. Appellant immediately reached for the gun in his own pocked and saw the other man holding a knife. *Id.* at 59-60. He admitted he "just pointed and fired." *Id.* at 60. Appellant stated he then told the victim's friends to "back up" and left the scene. *Id.* at 60-61. Appellant claimed he was not "sure if [he] shot anybody" before he fled to North Carolina. *Id.* at 52.

We note that Mr. Bell testified the victim "didn't have anything in his hand" before Appellant shot him. *See* N.T., 4/12/16, at 32-33. After the victim died, Williamsport Police Officer Zachary Schon recovered the victim's clothing from the hospital. *See id.* at 169-71. He testified that he found a "folded utility knife" in the victim's right front shorts pocket. *Id.* at 174. Officer Schon specified that the knife "was in its folded position with the blade folded into the handle." *Id.*

Appellant called several witnesses who confirmed his testimony that the victim was the initial aggressor. *See* N.T., 4/14/16, at 148 (Rashawn Ruley testified he saw "three guys like jump on [Appellant's] back like they were [physically attacking] him" before Appellant "got [himself] together" and fired a gunshot), 161, 164 (Rasheem Johnson "observed three men . . . punching and beating on" Appellant before the gunshot); N.T., 4/15/16, at 18-19 (Hookah Lounge bouncer Robert Eigenbrod observed the victim and his two friends leave the bar "[a]ngry" and "[s]houting" and proceeding in the direction of Appellant and Ms. Worthy). Further, Ruley claimed he saw a "sharp object" in the victim's hand which "looked like a knife" as the victim and his friends approached Appellant. N.T., 4/14/16, at 142. Notably, although Appellant's attorneys subpoenaed Ms. Worthy to appear as a witness, they chose not to call her to testify at trial. *See* N.T. PCRA H'rg at 26, 29.

On April 18, 2016, the jury found Appellant guilty of all charges, including first-degree murder.[7] On May 5, 2016, the court imposed the mandatory minimum sentence of life imprisonment for the first-degree murder charge, and an aggregate, concurrent term of 12 to 24 years' imprisonment for the remaining convictions. Appellant filed a post-sentence motion, which, following a hearing, the trial court denied on October 6, 2016.

---

[7] The charge of persons not to possess firearms was severed from the jury trial, and the court found Appellant guilty of that offense. *See* Order, 4/19/16, at 1 (unpaginated).

Thereafter, Appellant filed a timely direct appeal challenging the weight and sufficiency of the evidence to support his murder conviction, as well as the Commonwealth's failure to disprove his claim of self-defense, the court's refusal to provide a requested jury instruction, and several evidentiary rulings. **See Williams**, 176 A.3d at 305. As noted above, a panel of this Court affirmed the judgment of sentence, and the Pennsylvania Supreme Court later denied Appellant's petition for allocatur review. **See id.** at 326; **Williams**, 22 MAL 2018 (Pa. June 19, 2018).

On July 18, 2019, Appellant filed a timely, counseled PCRA petition, requesting an evidentiary hearing on a myriad of claims asserting trial counsels' ineffective assistance. **See** Appellant's Petition for Post-Conviction Collateral Relief, 7/18/19, at 3-5 (unpaginated). He was represented by privately retained counsel, Robert Hoffa, Esquire. Attorney Hoffa subsequently filed an amended petition, on September 30, 2019, followed by a supplemental amended petition on January 28, 2021. Meanwhile, on December 10, 2020, Appellant submitted certifications, pursuant to Pa.R.Crim.P. 902(A)(15), regarding the proposed PCRA hearing testimony of the following witnesses: Appellant, Ms. Worthy, Attorney Spring, and expert forensic toxicologist Dr. William Cox.

On July 28, 2021, the PCRA court entered an order which granted in part and denied in part Appellant's request for an evidentiary hearing. Specifically, the court: (1) granted Appellant an evidentiary hearing on his ineffectiveness claims challenging trial counsels' failure to present expert

- 6 -

testimony concerning the effect the drugs and alcohol in the victim's system at the time of his death would have had on his behavior, failure to call Ms. Worthy as a witness at trial, and failure to properly advise Appellant regarding the Commonwealth's plea offer; but (2) denied a hearing on the remaining claims. *See* Order, 7/28/21, at 1. The court noted that the order would serve as Pa.R.Crim.P. 907 notice with respect to those claims it intended to dismiss absent a hearing.

The court conducted a PCRA hearing on September 29, 2021. Appellant presented three witnesses, in addition to his own testimony: Dr. Cox, Attorney Spring, and Ms. Worthy. Notably, Appellant did not call lead trial counsel Attorney Miele as a witness or provide any explanation for his failure to do so. On October 27, 2021, the PCRA court issued an order and opinion denying Appellant's petition. This timely appeal follows.[8]

Appellant raises the following three claims for our review:

1. The [PCRA c]ourt erred in denying [Appellant's] request for a new trial due to trial counsel's failure to call eye witness [sic]

---

[8] Appellant complied with the PCRA court's directive to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Thereafter, the court issued a Rule 1925(a) opinion, which relied on its prior opinion issued on October 27th.

On January 27, 2022, Attorney Hoffa petitioned this Court to withdraw as PCRA counsel because Appellant had not made arrangements for continued payment of his fee. *See* Application for Permission to Withdraw as Counsel, 1/27/22, at 2 (unpaginated). By order entered January 28th, we granted Attorney Hoffa's petition, and directed the PCRA court to determine Appellant's eligibility for court-appointed counsel. On February 25, 2022, the PCRA court appointed present counsel, Donald F. Martino, Esquire, to represent Appellant during the pending appeal. *See* Order, 2/25/22.

and key defense witness Sheriah Worthy to establish [Appellant] acted in self-defense.

2. The [PCRA c]ourt erred in denying [Appellant's] request for a new trial due to trial counsel's failure to call an expert toxicologist to testify that the alleged victim was the aggressor due to his level of intoxication in combination with the illegal controlled substances in his system.

3. Trial counsel provided ineffective assistance of counsel by failing to properly advise [Appellant] that the evidence against him supported a First Degree Murder conviction and that he risked a First Degree Murder [c]onviction and a life sentence if he rejected the Commonwealth's offer to plead guilty to the charge of Third Degree Murder for a sentence of no more than twenty to forty years['] incarceration.

Appellant's Brief at 4.[9]

When considering an order denying PCRA relief,

[o]ur review . . . is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. . . .

*Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015) (citations & quotation marks omitted). When the PCRA court conducts a hearing,

[its] credibility findings are to be accorded great deference. *Commonwealth v. Johnson*, 356, 966 A.2d 523, 539 ([Pa.] 2009) ("A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts."). Indeed, where the record supports the PCRA court's credibility determinations, such

_____

[9] Appellant does not challenge the PCRA court's ruling on the ineffectiveness claims it denied without conducting a hearing, nor his related claim that trial counsel failed to file a "'404(b) motion' to permit the defense to present bad acts evidence related to the victim's use of drugs and alcohol." *See* PCRA Ct. Op. at 2. Thus, these claims are not before us.

- 8 -

determinations are binding on a reviewing court. ***Commonwealth v. Abu–Jamal***, 720 A.2d 79, 99 ([Pa.] 1998).

***Commonwealth v. Dennis***, 17 A.3d 297, 305 (Pa. 2011).

Each of Appellant's claims on appeal assert the ineffective assistance of trial counsel. Our review of such claims is guided by the following:

> Counsel is presumed to have been effective. In order to overcome that presumption and prevail on a claim of ineffectiveness, Appellant must establish that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his conduct; and (3) he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that because of the act or omission in question, the outcome of the proceeding would have been different.

***Commonwealth v. Bishop***, 266 A.3d 56, 62 (Pa. Super. 2021) (citation omitted). "The failure to satisfy any one of the prongs requires rejection of the petitioner's claim." ***Commonwealth v. Williams***, 141 A.3d 440, 454 (Pa. 2016).

In his first issue, Appellant contends trial counsel was ineffective for failing to call Sheriah Worthy to testify at trial. ***See*** Appellant's Brief at 11. He emphasizes that Ms. Worthy was subpoenaed by the defense to appear at trial; thus, she was available and willing to testify. ***Id.*** Moreover, Appellant insists her testimony was crucial because she was an eyewitness to the shooting, and she would have confirmed his claim that he acted in self-defense. ***Id.***

Appellant further argues trial counsel had no reasonable basis for failing to call Ms. Worthy as a witness. ***See*** Appellant's Brief at 13. He emphasizes Attorney Spring's testimony at the PCRA hearing that the trial team "didn't

think [Ms. Worthy] would be believed, and if she was believed that it would look like we played the game." ***Id.***, *citing* N.T. PCRA H'rg at 29. He contends this credibility determination should have been left to the jury. ***See*** Appellant's Brief at 15. Absent Ms. Worthy's corroborative testimony, Appellant maintains he was "standing alone in his assertion that the victim was intoxicated and . . . that [he] was assaulted by a group of highly intoxicated aggressive males." ***Id.*** Consequently, he insists he was denied a fair trial. ***Id.***

In order to demonstrate trial counsel was ineffective for failing to call a potential witness, a petitioner must establish:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

> Prejudice in this respect requires the petitioner to show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. Therefore, the petitioner's burden is to show that testimony provided by the uncalled witnesses would have been helpful to the defense.

***Bishop***, 266 A.3d at 65 (citation omitted).

It is undisputed that trial counsel knew Ms. Worthy was a potential witness since they subpoenaed her to testify at trial. N.T. PCRA H'rg at 26-27. In fact, Attorney Spring confirmed that Ms. Worthy was "physically present" during Appellant's trial. ***Id.*** at 27. There also appears to be no dispute that she was willing to testify for the defense. Thus, the questions

remaining are whether Ms. Worthy's testimony would have been "helpful to the defense," whether counsel had a reasonable basis for refusing to call her, and whether Appellant was prejudiced by counsel's omission. *See Bishop*, 266 A.3d at 62, 65.

Preliminarily, we note that the only attorney Appellant called to testify during his PCRA hearing was Attorney Spring. He did not present any testimony or affidavit from Attorney Miele, who — according to Attorney Spring — was "lead counsel." *See* N.T. PCRA H'rg at 24. Thus, any argument that Attorney Miele had no reasonable basis for failing to call Ms. Worthy as a defense witness is unsupported by the record. As an *en banc* panel of this Court observed:

> [A] lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion. In fact, our Supreme Court has cautioned against finding no reasonable basis for trial counsel's actions in the absence of supporting evidence. The fact that an appellate court, reviewing a cold trial record, cannot prognosticate a reasonable basis for a particular failure to raise a plausible objection does not necessarily prove that an objectively reasonable basis was lacking.

*Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 783–84 (Pa. Super. 2015) (*en banc*) (citations, quotation marks & footnote omitted).[10] Thus, Appellant's failure to establish whether **Attorney Miele** had a reasonable basis for failing to present Worthy as a witness, at best, undermines his

---

[10] The *Reyes-Rodriguez* Court recognized, however, that "[i]n some cases, the lack of a reasonable basis may be apparent from the face of the record, for example where counsel affirmatively misinforms his client of the law." *Reyes-Rodriguez*, 111 A.3d at 783 n.7. Appellant makes no such claim in the present case.

ineffectiveness claim. *See Williams*, 141 A.3d at 454 (failure to establish any one ineffectiveness prongs requires rejection of claim).

Nevertheless, we note that Attorney Spring testified the defense "team" — consisting of herself, Attorney Miele, and their paralegal — was "pretty much all involved in the major decisions" at trial, including their decision not to call Ms. Worthy as a defense witness. *See* N.T. PCRA H'rg at 28. Thus, we will proceed to an examination of Appellant's claim, despite his failure to call Attorney Miele to testify at the PCRA hearing.

In denying Appellant relief, the PCRA court opined:

> [Attorney Spring] testified that the trial team . . . decided not to call Ms. Worthy as a witness because they were concerned about her credibility. [Attorney] Spring noted that in her original interview with law enforcement, Ms. Worthy indicated that she did not see anything, she did not know anything, and she was intoxicated. When she was interviewed by the defense team, Ms. Worthy indicated that she saw [Appellant] being attacked by the victim. The defense team was concerned that the jury would view Ms. Worthy's testimony as "made up after the fact." Based on [Attorney] Spring's testimony, the court finds that counsel had a reasonable basis for not calling Ms. Worthy as a witness.
>
> The court also finds that counsel's concerns were well-founded. Ms. Worthy was not a good witness at the PCRA hearing. She was evasive, had a selective memory, had a motive to lie, and was not credible. She did not testify to half of the items contained in her witness certification. For example, in her certification, she indicated that she saw the victim with a knife at the time of the altercation.[11] In her testimony, however, she

___

[11] Ms. Worthy's witness certification included the following statement: "I saw [the victim] pull a knife and the other men there were jumping on [Appellant]." Witness Certification of Sheriah Worthy's Proffered Testimony
*(Footnote Continued Next Page)*

- 12 -

testified that she did not see a knife. This testimony would have been damaging to the defense theory at trial.

Ms. Worthy also claimed to have seen [Appellant] attacked by the victim and his friends, but she testified that [Appellant] was behind her and she was walking away from the victim. Therefore, it appears that the altercation would have been occurring behind Ms. Worthy and, if so, it would have been difficult for her to see anything, which would have made her original statement seem more truthful than her later statements to the defense team.

Ms. Worthy also would have been effectively impeached at trial on cross-examination. While [Appellant] was incarcerated pre-trial, he and Ms. Worthy had phone conversations, which were recorded. During the PCRA hearing, the prosecutor confronted Ms. Worthy with a particular conversation from July 7, 2014. In the call, [Appellant] said to Ms. Worthy, "you better fix this shit." He also told Ms. Worthy that there were a couple of things that he needed her to do, but he would not say them over "this phone." Ms. Worthy allegedly did not recall this conversation. [Appellant's] statements in these phone calls would have only reinforced to the jury that Ms. Worthy's original statement to law enforcement was truthful and that her contrary statements about seeing [Appellant] being attacked by the victim and his friends were made up to "fix" the situation for [Appellant] in accordance with their phone conversation.

PCRA Ct. Op. at 5-6.

Thus, the PCRA court concluded Appellant failed to prove both the second and third prongs of his ineffectiveness claim. We agree. First, the record supports the court's determination that Appellant's trial team had a reasonable basis for failing to call Ms. Worthy as a witness — her proposed testimony was not credible. Ms. Worthy — who was not a disinterested witness, but rather, the mother of Appellant's child — gave a statement to

in Accordance with Pa.R.Crim.P. 902(A)(15) and 42 Pa.C.S.A. § 9545(d)(1), at 4. We note, however, the certification was not signed by Ms. Worthy.

police immediately after the shooting in which she claimed she "did not see anything, she did not know anything, and she was intoxicated." PCRA Ct. Op. at 5. Attorney Spring testified that Ms. Worthy's interview with the defense was "substantially different." N.T. PCRA H'rg at 29. Moreover, the Commonwealth was in possession of a prison phone call between Ms. Worthy and Appellant from July 2014, just a month after the shooting, in which Appellant told Ms. Worthy she "better fix this shit." N.T. PCRA H'rg at 60. This lends credence to counsel's concern regarding Ms. Worthy's credibility.

Second, the PCRA court heard Ms. Worthy testify at the hearing and did, indeed, find her to be not credible. *See* PCRA Ct. Op. at 5-6. In fact, the court concluded Ms. Worthy's testimony would have been harmful to the defense. *See id.* The record supports the PCRA court's findings. See *See Dennis*, 17 A.3d at 305. Thus, we agree Appellant cannot demonstrate his trial team had no reasonable basis for failing to call Ms. Worthy as a defense witness, or that he was prejudiced by counsel's decision. Accordingly, Appellant's first ineffectiveness claim fails.

Next, Appellant contends trial counsel was ineffective for failing to present testimony from an expert forensic toxicologist that the victim "was the aggressor due to his level of intoxication in combination with the illegal controlled substances in his system." Appellant's Brief at 16. He maintains the evidence established that the victim "had a blood alcohol content of 0.23 and had cocaine and marijuana in his system at levels that would significantly affect his judgment and result in aggressive behavior." *Id.* Appellant argues,

however, this evidence was never "put into perspective or explained in a scientific manner" in connection with his claim of self-defense. *Id.* Appellant maintains that the expert he presented at the PCRA hearing —forensic toxicologist Dr. William Cox — "confirm[ed] exactly what [he] said occurred on June 1, 2014[, that t]he attack was unprovoked, physically aggressive in nature and required [him] to defend himself." *Id.* at 18. Moreover, Appellant insists Attorney Spring admitted she had no reasonable basis for failing to present an expert witness at trial. *See id.* at 18-19. During the PCRA hearing she testified that when the defense attempted to "bring[ ] in the victim's alcohol/drug stuff," the court precluded them from doing so because they had no expert. *Id.* at 19, *citing* N.T. PCRA H'rg at 36. She further stated she "remember[ed]" thinking "yeah we didn't." *Id.* Appellant contends counsel's failure to present an expert toxicologist denied him a fair trial.

The PCRA court summarized Dr. Cox's PCRA hearing testimony as follows:

> Dr. Cox testified . . . regarding the results of the victim's post mortem toxicology. He testified that the victim at the time of his death, had a blood alcohol content of .23%[.] Such a result represented "a severe degree of alcohol poisoning", could disturb equilibrium, cloud thoughts and impair judgment. It would "not [be] uncommon" for an individual to have maladaptive or psychological behaviors. Some individuals could be passed out.

> The victim also had metabolites of cocaine and marijuana in his system. The cocaine could cause hyperactivity, anxiety, grandiosity and impaired judgment. The marijuana could be associated with the development of psychosis particularly in individuals with a genetic predisposition. Dr. Cox, however, did not know whether the victim had such a genetic predisposition.

- 15 -

On cross-examination, Dr. Cox admitted that drugs and alcohol affect people differently. An individual's prior experience is a factor in how substances would affect them and he did not have any information regarding the victim's history and experience with alcohol and controlled substances. He acknowledged that [Commonwealth witness] Archie Bell's statements about the victim's behavior were consistent with the victim's alcohol and controlled substance levels. He opined that the victim's conduct of running towards and engaging in a confrontation when he had no understanding of the situation was inappropriate instead of approaching and advising [Appellant] to disengage. However, he also acknowledged that [Appellant's] acts of pulling a firearm and shooting the victim at point blank range could be indicative of drug and alcohol use by [Appellant]. In fact, such use would not surprise Dr. Cox, in light of the establishment that [Appellant] was coming from. From reviewing [Appellant's] testimony, he had been drinking but Dr. Cox did not know his levels. Without knowing his levels, [Appellant] could be in a state of euphoria or could be exhibiting inappropriate behaviors. . . .

PCRA Ct. Op. at 2-3.

Again, we conclude Appellant is entitled to no relief. Preliminarily, we note that Dr. Cox did not state during his testimony at the PCRA hearing, or aver in his December 4, 2020, report, that he was "willing and available to testify on [this] subject . . . at [the time of] trial[.]" *See Williams*, 141 A.3d at 460. On this basis alone, we could affirm the PCRA court's ruling. *See Commonwealth v. Selenski*, 228 A.3d 8, 15 (Pa. Super. 2020) ("[W]e may affirm a PCRA court's decision on any grounds if the record supports it.") (citation omitted), *appeal denied*, 240 A.3d 462 (Pa. 2020).

Nevertheless, the PCRA court rejected Appellant's claim based, primarily, on his failure to demonstrate he was prejudiced by the omission of this expert testimony. The court opined:

- 16 -

First, alcohol and controlled substances affect people differently and Dr. Cox admittedly had no information regarding the victim's prior history and experience with the substances found in his system at the time of his death.

Second, the Commonwealth conceded at trial that the victim was the initial aggressor. The eyewitness testimony may have varied somewhat between whether the victim was about to punch [Appellant], punched [Appellant] or "jumped" [Appellant], but the testimony was consistent that the victim ran toward [Appellant] and initiated the altercation. Rather, the key issues seemed to be whether the victim was wielding a knife at the time and then, after he was shot, he folded the knife and placed it in his pocket; whether [Appellant] reasonably believed he was in imminent danger of death or serious bodily injury; and whether [Appellant] violated a duty to retreat in light of his illegal firearm possession.

Third, Dr. Cox testified that the victim manifested inappropriate behavior by initiating an altercation rather than merely asking [Appellant] to disengage with the female. If that is "inappropriate behavior," what is shooting someone at point-blank range with a firearm that one is precluded from even possessing, rather than retreating or asking the victim to disengage?

Fourth and perhaps most significantly, the court agrees with the Commonwealth that Dr. Cox's testimony about the impact of drug and alcohol could or would have had on the victim's judgment and abilities would have undercut the defense theory at trial that the victim folded up the knife and placed it into his pocket after he was shot.

PCRA Ct. Op. at 4-5.

We detect no basis to disturb the ruling of the PCRA court. In order to establish he is entitled to a new trial based on prior counsel's ineffectiveness, Appellant must prove, *inter alia*, he was prejudiced by the lack of expert testimony. "The question is whether there is a reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different." **Williams**, 141 A.3d at 465 (citation & quotation marks omitted).

As the PCRA court aptly acknowledges, the Commonwealth conceded the victim was the initial aggressor. *See* PCRA Ct. Op. at 4; N.T., 4/18/16, at 124 (Commonwealth stated, "obviously [the victim] initiated this physical altercation. We understand that, we concede that."). Thus, Dr. Cox's proposed testimony — that the combination of drugs and alcohol in the victim's system may have caused him to exhibit aggressive and inappropriate behavior — would have had no effect on the jury's verdict.

Nor do we conclude this testimony would have supported Appellant's claim of self-defense. On direct appeal, Appellant argued, *inter alia*, that the Commonwealth failed to disprove he acted in self-defense. *See Williams*, 176 A.3d at 308. A panel of this Court rejected the claim by relying upon the trial court's opinion which concluded: (1) the evidence did not establish conclusively that the victim displayed a knife; (2) Appellant had a duty to retreat if he could do so safely; (3) the evidence established Appellant could have retreated safely; and (4) the evidence established "Appellant was not confronting deadly force but, at most, a punch with a closed fist." *Id.* at 310-11. Dr. Cox's opinion, regarding the likely effect of the level of alcohol and drugs in the victim's system, would not affect these findings. Accordingly, we agree with the PCRA court's determination that Appellant failed to demonstrate he was prejudiced by counsel's failure to present the testimony of an expert toxicologist. *See Bishop*, 266 A.3d at 62.

In his final claim, Appellant asserts trial counsel was ineffective for advising him to reject the Commonwealth's pretrial offer to plead guilty to

third-degree murder with a sentence of 20 to 40 years' imprisonment. *See* Appellant's Brief at 20. He asserts that both Attorney Miele and Attorney Spring assured him it was "very unlikely" he would be convicted of first-degree murder, and "the worst that would happen is he would be convicted of third degree," which was the Commonwealth's offer. *Id.* Appellant emphasizes counsel's "faulty advice appears to have been in large part the product of [counsel's] unfamiliarity with admissions made by [Appellant] during recorded prison phone calls." *Id.* at 21. In fact, Attorney Spring commented at the PCRA hearing that she was "surprised" at trial by both the content and number of calls introduced by the Commonwealth. *Id.* at 22. Due to counsel's deficient advice, Appellant insists he should be permitted to enter a guilty plea to the charge of third-degree murder. *Id.* at 26.

In order to demonstrate that trial counsel's ineffectiveness caused a defendant to reject a guilty plea, the defendant must demonstrate:

> [B]ut for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court *(i.e.*, **that the defendant would have accepted the plea** and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms and that the conviction or sentence, or both, under the offer's terms would have been less sever than under the judgment and sentence that in fact were imposed.

*Commonwealth v. Steckley*, 128 A.3d 826, 832 (Pa. Super. 2015), *citing Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

In rejecting Appellant's claim, the PCRA court opined:

> There is no testimony from [Appellant] that he would have accepted an open plea to third-degree murder if his attorneys had

discussed the offer and his case with him in more details. It is [Appellant's] burden of proof to show ineffective assistance of counsel. . . . [T]he court is not convinced that [Appellant] would have accepted an open plea to third-degree murder.

Moreover, counsel's advice was reasonable at the time and in light of the arguments the defense intended to make and did make at trial. The victim was the initial aggressor, the victim had a knife in his possession, and [Appellant] testified that he was acting in self-defense. Everything happened quickly. Any pre-mediation would have occurred within a split second in this case. Under the facts and circumstances of this case, a verdict of third-degree murder was much more likely than first-degree murder. In trials, however, as with most things in life, there are no guarantees. A first-degree murder conviction was possible and [Appellant] was aware of that possibility when he rejected the plea offer. [Appellant] rolled the dice and lost. Hindsight regret for his decision, however, does not prove ineffectiveness.

PCRA Ct. Op. at 8-9.

Again, we detect no abuse of discretion or error of law in the PCRA court's ruling. We recognize Attorney Spring testified at the PCRA hearing that the trial team did not discuss the potential impact of the prison phone calls with Appellant before advising him to reject the plea offer, and that those calls "became a major deal at trial." **See** N.T. PCRA H'rg at 31-32, 34. Nevertheless, she did not testify that the trial team would have advised Appellant to accept the plea had they considered the prison phone calls.

More significantly, **Appellant** never testified that he would have accepted the plea agreement had counsel discussed the prison phone calls with him. In his brief, Appellant insists that he stated in one of his recorded prison phone calls that he would have accepted "a deal for ten years." Appellant's Brief at 23. Regardless, the offer extended by the Commonwealth

was for a sentence of 20 to 40 years' imprisonment. Thus, we agree with the PCRA court that Appellant failed to demonstrate counsel's purported ineffectiveness caused him to reject the plea.

Because we conclude Appellant is not entitled to relief on any of his claims, we affirm the order denying PCRA relief.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/17/2022