J-S01042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                   :         PENNSYLVANIA
                                   :
          v.                        :
                                   :
                                   :
CHARLES EDWARD CHANDLER, JR.    :
                                   :
         Appellant             :     No. 917 WDA 2022

Appeal from the PCRA Order Entered August 1, 2022
In the Court of Common Pleas of Fayette County
Criminal Division at No(s):  CP-26-CR-0001809-2019

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                 **FILED: JUNE 6, 2023**

Charles Edward Chandler, Jr., *pro se*, appeals from the order dismissing, without a hearing, his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"). **See** 42 Pa.C.S. §§ 9541-9546. On appeal, Chandler raises three ineffective assistance of counsel claims, two directed toward his trial counsel and one against his PCRA counsel. After a thorough review of the record, we vacate the order and remand for the appointment of new counsel to file an amended petition on Chandler's behalf.

By way of background, following a jury trial, Chandler was found guilty of two counts of aggravated assault, and one count each of prohibited possession of a firearm, simple assault, recklessly endangering another

---

[*] Retired Senior Judge assigned to the Superior Court.

person ("REAP"), and harassment.[1]

As summarized by this Court in his direct appeal:

In the early morning hours of June 22, 2019, [Chandler] had an argument with his girlfriend, Lynne Feeney ("Lynne"). During this argument, [Chandler] threw a full, unopened beer can, which struck Lynne in the face. Lynne's nose bled profusely, and she felt pain, hurt, and shock. In addition, she sustained a broken nose and two black eyes. After throwing the beer can at Lynne, [Chandler] went upstairs to the bedroom. Shortly thereafter, a neighbor who witnessed this event called Lynne's daughter, Katelyn Feeney. Katelyn then called her brother, Todd Feeney, Lynne's son, and Katelyn informed Todd that their mother had been assaulted. Todd Feeney proceeded to his mother's home, accompanied by Jarred Rebovich, Katelyn's boyfriend. After seeing his mother's face, Todd asked her what had happened. Lynne told him she was attacked. Jarred and Todd went upstairs to search for [Chandler]. About ten minutes later, Lynne's ex-husband, Richard Feeney, and Katelyn arrived at her house. Richard also went upstairs. [Chandler] was upstairs in Lynne's bed.

Once upstairs, only Todd entered the bedroom while Richard and Jarred remained outside in the hallway. Todd ordered [Chandler] to "get out," and said "it's time to go." [Chandler] appeared "groggy and confused and kept saying things like 'what time is it' and 'what is going on.'" Eventually, Todd pulled [Chandler] out of the bed and told him, "It's time to go." [Chandler], who was naked, got out of bed. At no time during this incident did anyone hit or strike [Chandler]. [Chandler] came downstairs undressed, followed by Todd, Jarred, and Richard. When [Chandler] got downstairs, he put on his pants and shoes. During this time, [Chandler] and Richard exchanged words, but no physical contact occurred. Ultimately, [Chandler], Richard, Jarred, and Todd exited Lynne's home, and Todd and Richard followed [Chandler] to [Chandler's] car. [Chandler] opened his car door, reached inside, and removed a handgun. [Chandler] then said, "I will show you."

---

[1] **See** 18 Pa.C.S. §§ 2702(a)(4); 6105(a)(1); 2701(a)(1); 2705; and 2709(a)(1), respectively.

[Chandler] fired a shot in the direction of Richard and Todd. [Chandler] pointed his gun directly at Richard and fired it at him twice. Richard, who also had a firearm on him, shot twice at [Chandler]. After firing these shots, Richard jumped behind a green electrical box, and Todd fell to the ground. [Chandler] fired two more shots at Richard while Richard remained behind the electrical box. At least one of those bullets struck the box and damaged it. [Chandler] chased after Todd until nearby residents came out with their own guns and knocked [Chandler] to the ground. Subsequently, [Chandler] got into his car and drove away.

[Chandler] did not have a license to carry a firearm. [Chandler] testified in his own defense that he only tossed Lynne a beer, and he did not think it would hit her. [Chandler] stated that three individuals attacked him while he slept. [Chandler] claimed that one of the attackers put a pistol in his face and threatened him. [Chandler] averred that as he approached his car he was struck in the back of the head. [Chandler] admitted that he removed his handgun from inside his car, and he does not remember who fired first. According to [Chandler], he only fired his gun in self-defense because he feared for his life.

On July 8, 2020, a jury convicted [Chandler] of the above-mentioned crimes. The court sentenced [Chandler] on July 14, 2020, to an aggregate of 72-144 months' incarceration.

*Commonwealth v. Chandler*, 826 WDA 2020 at \*1-4 (Pa. Super., filed Aug. 12, 2021) (record citations omitted).[2] Ultimately, we affirmed Chandler's judgment of sentence, and Chandler sought no further relief from our Supreme Court.

Thereafter, on March 24, 2022, Chandler, *pro se*, filed the present,

---

[2] The prohibited possession of a firearm charge sentence, amounting to 72 to 144 months of incarceration, was ordered to run concurrently with the sentences that were imposed at three other counts.

timely PCRA petition. Several weeks later, the court appointed PCRA counsel for Chandler.

On June 16, 2022, PCRA counsel filed with the lower court a motion to withdraw from representation and "no-merit" letter, pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1998), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). Chandler filed a response to this motion/"no-merit" letter on June 24, 2022. Prior to deciding counsel's motion, the court dismissed, without a hearing, Chandler's PCRA petition on August 1, 2022.[3] From this dismissal, Chandler filed a timely *pro se* notice of appeal on August 15, 2022.[4] On August 23, 2022, Chandler was directed to file a concise statement of matters complained of on appeal within thirty days. At this juncture, despite the lower court having failed to rule on counsel's motion to withdraw, Chandler filed a *pro se* statement on September

_____

[3] The court, on June 21, 2022, provided Chandler with notice of its intention to dismiss pursuant to Pennsylvania Rule of Criminal Procedure 907, giving Chandler the opportunity to respond, to which Chandler filed a *pro se* response on July 8, 2022.

[4] Under normal circumstances, this Commonwealth does not permit hybrid representation. Stated differently, this Court will not accept *pro se* filings while an appellant is still represented by counsel. *See Commonwealth v. Williams*, 151 A.3d 621, 623 (Pa. Super. 2016). However, because it protects a constitutional right, the filing of a *pro se* notice of appeal while represented by counsel is distinguishable from other filings. *See id*., at 624. Therefore, a *pro se* notice of appeal will be docketed even where a *pro se* appellant is still technically represented by counsel. *See id*., at 623.

1, 2022.[5]

On September 13, 2022, the lower court granted PCRA counsel's motion to withdraw. A few weeks later, this Court, *per curiam*, issued an order excusing PCRA counsel from representing Chandler before this Court and, too, advising Chandler that he was now proceeding *pro se* in the present appeal.[6] Correspondingly, Chandler filed an appellant's brief, and the lower court issued a statement in lieu of an opinion, referencing and expounding upon its prior adjudication of Chandler's PCRA issues in its August 1, 2022, opinion. As such, this appeal is ripe for review.

On appeal, Chandler presents three questions:

1. Did Chandler sufficiently allege that his trial counsel was ineffective for failing to procure certain photographic medical evidence that would have undermined the reliability of the witnesses who testified against him and bolstered his own testimony?

2. Was Chandler's trial counsel ineffective for failing to cross-examine four witnesses?

3. Was Chandler's PCRA counsel ineffective for failing to

---

[5] Notably, the court's directive for Chandler to file a concise statement provides no indication that Chandler's counsel received notice of this order. In fact, on the distribution line for "ATTY," implying Chandler's counsel, the corresponding line is left blank. **See** Order, 8/23/22. We conclude that because Chandler was still represented by counsel at that point, this exclusion is an administrative breakdown on the part of the lower court. As such, and in seeing no benefit to remand for Chandler to file another *pro se* statement *nunc pro tunc*, we decline to preclude Chandler from appellate review. **See e.g.**, **Commonwealth v. Leatherby**, 116 A.3d 73, 79 (Pa. Super. 2015).

[6] The order also indicated that Chandler "may retain private counsel." Order, filed 10/21/22.

investigate the claims asserted in his PCRA petition?

*See* Appellant's Brief, at 6.

As background, for appeals that are taken from a PCRA petition's dismissal: "[w]e review a ruling by the PCRA court to determine whether it is supported by the record and is free of legal error. Our standard of review of a PCRA court's legal conclusions is *de novo*." **Commonwealth v. Cousar**, 154 A.3d 287, 296 (Pa. 2017) (citations omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Bishop**, 266 A.3d 56, 62 (Pa. Super. 2021) (citation omitted).

Under Pennsylvania Rule of Criminal Procedure 907, a PCRA court may, after proper notice and an opportunity to respond, dismiss a PCRA petition if "the judge is satisfied from … review [of the petition] that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings[.]" Pa.R.Crim.P. 907(1).

Here, in its notice of intention to dismiss, the court concluded that there was "no reasonable probability that the outcome of [Chandler's] trial would have been different had the jury learned of the physical injuries that [Chandler] asserts he sustained at the hands of his victims." Notice of Intention to Dismiss, 6/21/22. It its subsequent order dismissing Chandler's petition, the court wrote that because he was found guilty of possessing a

firearm as a prohibited person, Chandler defending himself had nothing to do with his possession of that instrument. *See* PCRA Opinion and Order, 8/1/22, at 6. Additionally, the court found Chandler's desire to cross-examine his victims in a way that "would have exposed inconsistencies in their stories and made them less credible" to be "equally meritless[.]" *Id*. The court's corresponding statement that it issued in lieu of an opinion materially reaches the same set of conclusions. *See, e.g*., Statement in Lieu of Opinion, 9/7/22, at 2 ("[W]hether or not [Chandler] was defending himself when he used it has nothing to do with the fact that he possessed [a firearm].").

Since it is controlling, we address Chandler's third issue, which contends that his PCRA counsel was ineffective for not investigating or developing the ineffective assistance of trial counsel claims asserted in Chandler's *pro se* PCRA petition. Given that Chandler's first filing after the granting of PCRA counsel's motion to withdraw from representation appears to be his appellate brief before this Court, Chandler's first opportunity to raise an ineffective assistance of PCRA claim was at this juncture. As such, under ***Commonwealth v. Bradley***. 261 A.3d 381 (Pa. 2021), Chandler was permitted to raise such a claim. *See id.* at 405 (allowing for "a petitioner to raise claims of ineffective PCRA counsel at the first opportunity, even if on appeal[]").

For claims arguing ineffective assistance of counsel, we utilize a well-settled set of precepts:

We presume counsel's effectiveness, and an appellant bears the burden of proving otherwise. To establish ineffectiveness of counsel, a PCRA petitioner must plead and prove: [(1)] his underlying legal claim has arguable merit; [(2)] counsel's actions lacked any reasonable basis; and [(3)] counsel's actions prejudiced him. Failure to satisfy any prong of the ineffectiveness test requires dismissal of the claim. Arguable merit exists when the factual statements are accurate and could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

*Commonwealth v. Urwin*, 219 A.3d 167, 172 (Pa. Super. 2019) (internal citations and quotation marks omitted) (brackets added). Our Supreme Court has defined prejudice as follows: "a defendant raising a claim of ineffective assistance of counsel is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings." *Commonwealth v. Spotz*, 84 A.3d 294, 315 (Pa. 2014) (citations, brackets, and internal quotation marks omitted).

Chandler's contention focuses on PCRA counsel's ineffectiveness when counsel failed to raise ineffective assistance claims as to trial counsel. "In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue." *Commonwealth v. Burkett*, 5 A.3d 1260, 1270 (Pa. Super. 2010). Chandler believes that his trial counsel rendered ineffective assistance when counsel: (1) failed to procure and utilize medical records and

photographic evidence of his injuries in a way that could have been useful in a self-defense claim or to cast doubt on the credibility of several of the victims; and (2) declined to cross-examine several of the witnesses about inconsistencies between statements initially given to the police and their later testimony at trial.

**Bradley** establishes that, depending on the circumstances of a case, remand may be appropriate:

> In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims. However, in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter. Consistent with our prior case law, to advance a request for remand, a petition would be required to provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness; however, where there are material facts at issue concerning claims challenging counsel's stewardship and relief is not plainly unavailable as a matter of law, the remand should be afforded.

**Bradley**, 261 A.3d at 402 (cleaned up). By way of further elucidation, "appellate courts will have the ability to grant or deny relief on straightforward claims, as well as the power to remand to the PCRA court for the development of the record." *Id*. at 403.

Generally, "a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion." **Commonwealth v. Colavita**, 993 A.2d 874, 895 (Pa. 2010), *overruled on other grounds by* **Bradley***, supra*. Moreover, it is the PCRA court, not the appellate court, that is the appropriate forum for evidentiary and factual development. **See**

*Commonwealth v. Shaw*, 247 A.3d 1008, 1017 (Pa. 2021) (citations omitted).

As the first layer of his ineffective assistance claim, Chandler contends that his trial counsel failed "to investigate and present evidence of the injuries [he] sustained at the hands of the Feeney's posse prior to [him] shooting his gun in Richard Feeney's direction." Appellant's Brief, at 13. "Specifically, counsel failed to obtain intake reports and photographs that documented [his] injuries." *Id*., at 13-14 (broadly describing his "Uniontown Hospital medical records and the photographs taken by the [Pennsylvania] State Police shortly after his arrest[]"). As Chandler testified on his own behalf, these photographs would have bolstered his version of events, which demonstrated that "he was legitimately fearful that … people were going to try to kill him for what they believed he'd done to Lynne Feeney." *Id*., at 14 (record citation omitted).

In looking at his initial filing, Chandler alleges in his *pro se* PCRA petition that trial counsel failed to obtain and admit into evidence certain photographs and medical records. *See* PCRA Petition, 3/24/22, at 2. Expounded upon in the certification appended to that petition, Chandler wrote that he told his trial counsel "that medical intake records from the Fayette County Hospital would prove [him] right when [he] said that [he] was beaten up badly and in fear for [his] life before he used the gun in self-defense[.]" *Id*., at 4. Moreover, "[t]he medical records would also undermine the Commonwealth's case because their witnesses were saying [he had] shot the gun unprovoked.

- 10 -

[Chandler] also told [trial counsel about] the [Pennsylvania State Police] photographs … that were taken shortly after [he] was arrested." *Id*.

As illuminated, *supra*, the lower court concluded that Chandler's "argument that evidence of his alleged injuries would have shown that he had been beaten by his victims has no merit at all: [Chandler] was found guilty of [possessing a firearm as a prohibited person, **see** 18 Pa.C.S. § 6105(a)(1)]; whether or not he was defending himself when he used it has nothing to do with the fact that he possessed it." PCRA Court Opinion and Order, 8/1/22, at 6. While we agree that because Section 6105 criminalizes mere possession or use of a firearm, a potential self-defense claim has no relevance to the question of whether Chandler committed that crime, Chandler was convicted of other offenses where self-defense could have been relevant, such as aggravated assault. Indeed, in its jury instructions, the court referenced Chandler's assertion of self-defense, specifically in the context of the aggravated assault and REAP charges. **See** N.T., 7/9/20, at 48-49. Moreover, notwithstanding the concurrent nature of Chandler's sentence, i.e., the sentence imposed at his firearms offense and aggregate sentence being the same duration of time, these other crimes carry with them potential collateral consequences and are capable of being vacated.

In PCRA counsel's "no-merit" letter, it states that Chandler, in both his testimony and PCRA submissions, has not demonstrated that he suffered from any serious bodily injuries during his altercation with several of the victims.

*See* No-Merit Letter Pursuant to *Commonwealth v. Finley*, 6/10/22, at 10 (unpaginated). Even if the records or photographs did show that he sustained "more severe injuries than did [several of the victims], it would not likely have any impact on … credibility." *Id*. PCRA counsel then speculates, without any direct knowledge, why trial counsel omitted evidence of Chandler's physical condition. PCRA counsel then concludes that Chandler's alleged physical condition would have been immaterial at trial and that it did not have any effect on the victims' credibility. *See id*., at 13 (unpaginated).

At trial, Chandler testified that he awoke to "three guys on top of [him] trying to wake [him] up, hitting [him]." N.T., 7/9/20, at 27. One of those men "put his pistol in [his] face." *Id*. They pushed him out of the house he had been sleeping in and "followed [him] to [his] car." *Id*. Then, when Chandler opened up the door to his vehicle, he "got hit in the back of the head." *Id*. Chandler also indicated that these men were racially abusing him. *See id*., at 28. Upon reaching his vehicle and after being struck in the back of the head, Chandler "reached down under [his car] seat and pull[ed] out a pistol." *Id*. Chandler grabbed the pistol because he "was in fear for [his] life. [He] knew one of them had a gun." *Id*. Although gunfire was exchanged thereafter, Chandler did not remember who fired the first shot. *See id*. Chandler also indicated that, prior to leaving in his car, he was "punched one time behind him" after the shooting occurred. *See id.*, at 29.

When one employs deadly force, as Chandler did, the elements of a self-

defense claim are that the individual: (1) reasonably believed that force was necessary to protect himself against death or serious bodily injury; (2) was free from fault in provoking the use of force against him; and (3) did not violate any duty to retreat. *See Commonwealth v. Mouzon*, 53 A.3d 738, 740 (Pa. 2012); *see also* 18 Pa.C.S § 505(b)(2).

At this point, we are compelled to find that the record has not been sufficiently developed to allow for our review of this claim. Assuming that the medical records or photographs documenting Chandler's injuries exist, it is arguable that they could have assisted in supplementing his self-defense claim that had, at trial, solely been predicated on his own testimony and in undermining the victims' narratives. As self-defense was a relevant consideration to at least two of the crimes Chandler was found guilty of committing, without having access to the complained-of records or photographs or any record of trial counsel's involvement in or knowledge of these items, we are unable to ascertain whether Chandler's underlying claim lacks merit or to what extent the omission of the records or photographs could have prejudiced him at trial.

Despite there having been some level of review of this issue in the "no merit" letter, PCRA counsel did not sufficiently address the impact that the medical records or photographic evidence would have had in bolstering Chandler's self-defense claim or rebutting the victims' testimony. Therefore, we cannot conclude that PCRA counsel adequately discharged his duties under

*Turner* and *Finley*. As explained above, we are likewise unpersuaded by the PCRA court's analysis, which focuses on the impact of the photographs on Chandler's possessing a firearm as a prohibited person conviction, rather than his aggravated assault and REAP convictions.

Given the unclear nature of this claim and in tandem with Chandler asserting more than a boilerplate argument of trial and PCRA counsel ineffectiveness, we remand this claim to the PCRA court for further consideration. Upon remand, the PCRA court shall appoint new counsel to more fully explore this issue. The court may benefit from an amended PCRA petition, and it may conduct an evidentiary hearing if warranted.

In his other ineffective assistance of trial counsel allegation, Chandler contends that there was a failure to explore inconsistencies, via cross-examination, between the statements the witnesses gave in police reports contemporaneous with Chandler's criminal activity and the testimony those same witnesses gave at trial. *See* Appellant's Brief, at 17-18.

Despite mentioning these apparent inconsistencies, Chandler does not cite, much less allude to, any actual inconsistent statement made by any of the witnesses. Instead, Chandler baldly asserts that "the witnesses had collaborated with one another to concoct a story that lessened their culpability and increased … Chandler's." *Id.*, at 20. Based on Chandler's total failure to illuminate any contradiction between the witnesses' initial police statements and their trial testimony, he failed to prove that his underlying claim has merit.

Accordingly, because relief is "plainly unavailable as a matter of law," **Bradley**, 261 A.3d at 402, Chandler has not demonstrated that he received ineffective assistance of counsel because of counsel's failure to cross-examine these witnesses, and we need not remand to the PCRA court for further consideration of this claim.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/6/2023