J-A05039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                       :                      PENNSYLVANIA
                                                        :

                v.                           :

CURTIS BUSH,                     :

             Appellant         :     No. 43 EDA 2023

Appeal from the PCRA Order Entered June 10, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013467-2013

BEFORE:    DUBOW, J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED MAY 10, 2024**

Curtis Bush ("Bush") appeals from the order denying his timely, first

Post Conviction Relief Act[1] ("PCRA") petition.[2]  We affirm.

On direct appeal, this Court summarized the underlying facts as follows:

> The [victim,] Lamont Paschall, testified that . . . as he was traveling [by bicycle near 19th and] Poplar Street[s] in Philadelphia, he noticed a group of males on the corner as he [turned] onto Leland Street.  As he approached the middle of the block[,] he heard a gun "cock" behind him and heard shots.  On reaching the end of the block . . . he was hit in the back by a bullet and fell [at] the corner of Ginnodo Street.  As he was attempting to get up, [Bush] stood "over top" of him, shooting him multiple times.  He described [Bush's] gun as "black and square."  [Bush] then ran back down Leland [Street] in the direction from which he had come.

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

[2] In his counseled notice of appeal, Bush purported to appeal from the judgment of sentence entered October 6, 2016.  This appeal lies instead from the PCRA order entered June 10, 2021.  We have amended the caption to reflect the correct information.

>     [The victim] testified that he knew [Bush] from the
> neighborhood and had, in fact, seen him earlier that day. He also
> testified that [Bush's] face was uncovered and he "looked of
> shock[ and] started shooting again."

*Commonwealth v. Bush*, 222 A.3d 843 (Pa. Super. 2019) (unpublished memorandum at \*\*1-2). The victim sustained eight gunshots and survived. No weapon was recovered. *See* N.T. Jury Trial Vol. III, 5/19/16, at 92. A Commonwealth expert witness in firearms identification opined that the fired cartridge casings found at the scene were all fired from the same semi-automatic pistol, and were "consistent with a Glock type pistol." *Id*. at 91, 95.

The Commonwealth charged Bush with attempted murder, aggravated assault, possessing instrument of a crime ("PIC"), and firearms offenses.[3] His first jury trial, in 2015, ended in a mistrial. The charges proceeded to a second jury trial, at which Bush was represented by Matthew Hagarty, Esquire ("Trial Counsel"). The victim testified about the shooting as summarized above and identified Bush as the person who shot him.

Bush did not testify in his own defense, but called two witnesses to testify. At this juncture, we note the shooting occurred around 10:52 p.m. One witness, Michelle Ruffin, testified that she left work at 11:00 p.m. and arrived home at approximately 11:10. *See* N.T., 5/19/16, at 133-34. Her

_____

[3] *See* 18 Pa.C.S.A. §§ 901(a), 2502(a), 2702(a), 907(a) respectively.

friend called her and told her about the shooting. Around 11:20, Ruffin exited her house, and her friend and three "guys," including Bush, were outside. *Id*. at 136. Ruffin knew Bush as a patron at the swimming pool where she worked. The group walked to the scene of the crime to learn more about the shooting and stood there together for thirty to forty-five minutes. *See id*. at 138-39. Ruffin then returned home. She did not notice anything unusual about Bush, nor saw any blood on his clothing or sneakers, and he did not appear excited or agitated. *See id*. at 140. On cross-examination, Ruffin confirmed that she first saw Bush that night at 11:20 p.m. and she did not know where he was before then. *Id*. at 143.

The jury found Bush guilty of aggravated assault, PIC, firearms not to be carried without a license, and carrying firearms in Philadelphia.[4] The jury could not reach a verdict on the charge of attempted murder, but Bush accepted the jury's partial verdict. On October 6, 2016, the trial court imposed an aggregate sentence of fifteen to thirty years' imprisonment. Bush filed timely post-sentence motions, which were denied by operation of law. Bush took a timely direct appeal, and this Court affirmed the judgment of sentence on October 18, 2019.

---

[4] 18 Pa.C.S.A. §§ 6016, 6108, respectively.

On June 23, 2020, Bush filed the underlying, timely PCRA petition, *pro se*.[5] Counsel was appointed and filed an amended PCRA petition, requesting an evidentiary hearing and raising two claims of Trial Counsel's ineffective assistance. First, Bush averred Trial Counsel failed to interview Ruffin and another witness, Isiah Sanders, both of whom would have testified they were walking with Bush near the crime scene and would have vouched for his innocence. Second, Bush asserted Trial Counsel failed to call a firearms expert, who could have refuted "the Commonwealth's theory that the alleged gun used in the crime made a clicking sound[,] while the particular type of gun used produces no such sound upon firing." Bush's Amended Petition Under Post-Conviction Relief Act, 10/27/20, at 2.

The PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss the PCRA petition without a hearing, and on June 10, 2021, dismissed the petition. Bush did not initially appeal, but upon reinstatement of his appeal

---

[5] When this Court affirmed Bush's judgment of sentence on October 18, 2019, Bush had thirty days thereafter to file a petition for allowance of appeal with our Supreme Court. *See* Pa.R.A.P. 1113(a); *see also* 1 Pa.C.S. § 1908 (providing that when last day of any period of time referred to in any statute falls on a Sunday, such day shall be omitted from computation). Bush did not file such a petition, and thus, for PCRA purposes, his judgment of sentence became final on that deadline — Monday, November 18, 2019. *See* 42 Pa.C.S.A. § 9545(b)(3) (stating that a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of Pennsylvania or at the expiration of time for seeking the review). Bush then generally had one year, or until November 18, 2020, to file a PCRA petition. *See* 42 Pa.C.S.A. § 9545(b)(1).

rights,[6] he filed a timely appeal. Bush then filed, in response to the PCRA court's order, a Pa.R.A.P. 1925(b) statement, which raised, *inter alia*, a new claim — that Trial Counsel was ineffective for not investigating potential witnesses who lived near the shooting, nor possible video footage from their homes. The PCRA court issued a Rule 1925(a) opinion.

Bush presents three issues for our review:

I. Whether the PCRA court erred in denying [Bush's] PCRA petition without an evidentiary hearing on the issues presented in the amended PCRA petition[:]

> A. Whether counsel was ineffective for failing to investigate[.]

> B. Whether counsel was ineffective for failing to call witnesses[.]

> C. Whether counsel was ineffective for failing to call a defense firearms expert[.]

Bush's Brief at 7.

We first set forth the relevant standard of review:

Our standard of review in a PCRA appeal requires us to determine whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from error. The scope of our review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most

---

[6] On December 8, 2021, following the dismissal of the PCRA petition, Bush filed a second PCRA petition *pro se*. The PCRA court permitted his then counsel to withdraw, and appointed present counsel, Peter Levin, Esquire. Attorney Levin filed an amended PCRA petition, seeking reinstatement of Bush's right to appeal from the dismissal of the first PCRA petition. The Commonwealth did not oppose, and the PCRA court granted the relief sought, finding that Bush's "discovering that no appeal was filed satisfies the newly-discovered fact exception to the [PCRA's] time bar." PCRA Court Opinion, 5/8/23, at 2.

favorable to the party who prevailed before that court. The PCRA court's factual findings and credibility determinations, when supported by the record, are binding upon this Court. However, we review the PCRA court's legal determinations *de novo*.

***Commonwealth v. Orner***, 251 A.3d 819, 824 (Pa. Super. 2021) (*en banc*) (citations omitted).

This Court has explained:

> To prevail on a claim that counsel was constitutionally ineffective, the defendant must overcome the presumption that counsel was effective by showing that: (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance.
>
> A failure to meet any of these required prongs bars a petitioner from obtaining relief.

***Id***. at 824 (citations omitted).

In his first issue, Bush avers that Trial Counsel was ineffective for failing to interview neighbors near the scene of the shooting and obtaining videos from their homes. ***See*** Bush's Brief at 22. Bush alleges "the video footage would have revealed that [he] was not in the video related to the incident," and that proper investigation of both the video and the witnesses "could have led to the introduction of available exculpatory evidence." ***Id***.

The failure to raise a claim in a PCRA petition results in waiver of the claim on appeal. ***See Commonwealth v. Bedell***, 954 A.2d 1209, 1216 (Pa. Super. 2008); ***see also*** Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in

the trial court are waived and cannot be raised for the first time on appeal"). Additionally, this Court has held that a petitioner has waived a claim of counsel's ineffectiveness when he raises it for the first time in a Rule 1925(b) statement. **See Commonwealth v. Rigg**, 84 A.3d 1080, 1085 (Pa. Super. 2014).

A careful review of Bush's counseled amended PCRA petition, along with the supporting memorandum of law, reveals that the only claims raised were Trial Counsel's alleged ineffectiveness for: (1) failing to investigate Ruffin and Sanders as "seemingly key potential defense witnesses," as they "[b]oth would have testified that they were walking with [Bush] near the crime scene and could have vouched for his innocence;" and (2) failing to call a firearms expert to refute "the Commonwealth's theory" that the gun used in the crime made a clicking sound upon discharge. Bush's Memorandum of Law in Support of Amended Petition Under Post-Conviction Relief Act, 10/27/20 ("PCRA Memorandum"), at 1-2. Bush raised the present issue — concerning Trial Counsel's investigation of neighbors and video footage — for the first time in his Rule 1925(b) statement. Accordingly, the issue is waived for our review.[7] **See Rigg**, 84 A.3d at 1085; **see also Bedell**, 954 A.2d at 1216.

---

[7] We note the PCRA court addressed the merits of this claim, and found it was "no more than baseless speculation." PCRA Court Opinion, 5/8/23, at 6. The court reasoned that Bush: failed to even name the potential witnesses; did not provide affidavits or allege the witnesses would have been willing to testify at trial; did not claim any video footage would be available; and did not cite

*(Footnote Continued Next Page)*

- 7 -

In his second issue, Bush avers Trial Counsel was ineffective for failing to contact and interview Sanders.[8] This Court has stated:

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the [ineffectiveness] test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony was so prejudicial as to have denied the defendant a fair trial. To demonstrate . . . prejudice, a petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case."

*Orner*, 251 A.3d at 825 (citations omitted).

Bush contends that Sanders would have testified that: "he was with [Bush] most of the entire day of the shooting" and "[t]hey spent time at a friend's home and met with Michelle Ruffin[, and] walked with her to the crime scene after hearing the shots." Bush's Brief at 25. Bush insists this "testimony would have . . . negated the Commonwealth's theory and conclusions on the

_____

any evidence that the witnesses' testimony or any video would have supported his claim of innocence.

On appeal, Bush maintains that he did provide "the names of the witnesses to his counsel to investigate." Bush's Brief at 22. This response does not address the issues pointed out by the trial court — that in his PCRA petition, Bush failed to identify the names of the potential witnesses, aver that they would have been available and willing to testify at trial, and explain particularly what their testimony would have been. *See Orner*, 251 A.3d at 825 (discussed *infra*).

[8] On appeal, Bush has abandoned his claim that Trial Counsel was ineffective for not interviewing Ruffin. We reiterate that Ruffin did testify as a defense witness at trial.

shooting" and "would have changed the outcome of the trial." **Id**. Bush further states that Sanders "was present in the courtroom throughout the trial but [Trial C]ounsel made no attempt to interview him . . . even though [Bush] claims he asked his counsel to do so." **Id**. Finally, Bush contends that Sander's willingness to testify at trial was "shown by his presence throughout the trial." **Id**.

Preliminarily, we observe that Bush claims for the first time on appeal that Sanders was with him "most of the entire day of the shooting." Bush's Brief at 25. In his PCRA petition, Bush merely alleged that Sanders — as well as Ruffin — "would have testified that they were walking with [him] near the crime scene and could have vouched for his innocence." Bush's PCRA Memorandum at 1. Accordingly, the particular theory, that Sanders was with Bush **before** the shooting, is waived for failure to preserve it before the PCRA court. **See Bedell**, 954 A.2d at 1216.

In denying Bush's claim — that Trial Counsel was ineffective for failing to interview Sanders or call him to testify — the PCRA court set forth the following reasoning. First, Bush failed to provide a witness certification for Sanders, and Sanders' alleged presence in the courtroom, alone, did not establish that Bush told Trial Counsel about him, nor that Sanders was willing to testify as a defense witness. **See** PCRA Court Opinion, 5/8/23, at 8. Furthermore, Bush could not show he was prejudiced because at most,

Sanders would have corroborated Ruffin's testimony, which did not "establish [Bush's] innocence, [nor] show where [Bush] was prior to the shooting." *Id*.

Our review reveals the PCRA court's analysis is supported by the record and free of legal error. First, as stated above, in his PCRA petition Bush merely alleged that he, Sanders, and Ruffin were walking together "near the crime scene." Bush's PCRA Memorandum at 1. His present claim, that he and Sanders were also together earlier that day, is waived as discussed above. In this context, we agree with the PCRA court that Sanders's proposed testimony, that he was with Bush and Ruffin near the crime scene after the shooting, would not establish Bush's innocence, as it is not relevant to Bush's whereabouts before or even during the shooting. Furthermore, Bush does not address the PCRA court's reasoning that he failed to present an affidavit or certification that Sanders was available and willing to testify. *See Orner*, 251 A.3d at 825. Bush presents no support for his bald claim that Sanders was present in the courtroom, and in any event, he does not cite any authority, nor have we discovered any authority, that an individual's presence in the courtroom alone establishes his willingness to testify as a defense witness.

Finally, to the extent Bush challenges the Commonwealth's evidence as to the type of gun used,[9] he does not explain how this evidence — the type of gun used — denied him a fair trial. We emphasize that the victim clearly

---

[9] We reiterate that no weapon was recovered.

identified Bush as the shooter; the victim testified he knew Bush and saw his uncovered face when Bush stood over him and shot him. The jury was free to believe this testimony and weigh it against Ruffin's testimony that she observed Bush after the shooting. *See Commonwealth v. Bishop*, 266 A.3d 56, 68 (Pa. Super. 2021) (stating that the jury is free to believe all, none, or some of the evidence, to determine the credibility of witnesses, and to resolve any contradictory testimony). Accordingly, Bush has not shown he was prejudiced by the absence of Sanders' testimony. *See Orner*, 251 A.3d at 825. For the foregoing reasons, we conclude no relief is due on Bush's second issue.

In his third issue, Bush asserts Trial Counsel was ineffective for not presenting a firearms expert at trial. This Court has stated:

> A claim that counsel was ineffective for failing to call a potential expert witness to testify at trial requires a petitioner to "establish that the witness existed and was available, that counsel was informed of the witness' existence, that the witness was ready and willing to testify[,] and that the absence of the witness prejudiced the defendant to a point where the defendant was denied a fair trial."

*Commonwealth v. Smith*, 167 A.3d 782, 793 (Pa. Super. 2017) (citations omitted).

Bush avers that a firearms expert would have "reviewe[ed] the Commonwealth's theory [and the Commonwealth witnesses' testimony] that the gun used in the crime made a clicking sound[,] while the particular type of gun allegedly used produces no such sound." Bush's Brief at 26. Bush's

sole supporting discussion is that a defense expert's testimony "on such a critical issue would have been more convincing than argument from counsel." *Id*. at 27.

The PCRA court denied relief on Bush's claim, finding: (1) the issue was underdeveloped; (2) Bush had not provided the name of any firearms expert who was willing and available to testify at trial; (3) he had not produced a signed certification from any expert attesting to the proposed testimony; and (4) Bush was not prejudiced because "the proffered testimony would not have changed the outcome of the case." PCRA Court Opinion, 5/8/23, at 9-10.

Our review reveals the PCRA court's analysis is supported by the record and free of legal error. Bush does not address, let alone dispute, that his PCRA petition did not provide the name of any proposed firearms expert nor aver that the expert was willing and available to testify at trial. Instead, Bush continues to present the same bald claim that some unnamed expert witness would have "review[ed] the Commonwealth's theory that the gun used in the crime made a clicking sound." Bush's Brief at 26.

In any event, Bush fails to show that the absence of such expert testimony denied him a fair trial. *See Smith*, 167 A.3d at 793. In claiming he was prejudiced, Bush again fails to address the victim's trial testimony. Regardless of the victim's testimony that he heard a gun "cock" just before shots were fired, the victim also testified that he knew Bush from the neighborhood and saw his uncovered face as Bush stood over him and shot

him. For the foregoing reasons, we conclude no relief is due on Bush's third issue.

We now review an additional claim raised throughout Bush's brief — that he was entitled to an evidentiary hearing. This Court has stated:

> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

***Commonwealth v Grayson***, 212 A.3d 1047, 1054 (Pa. Super. 2019) (citations omitted). Section 9545(d)(1) of the PCRA provides:

> (i) Where a petitioner requests an evidentiary hearing, the petition shall include a certification signed by each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony.
>
> (ii) If a petitioner is unable to obtain the signature of a witness under subparagraph (i), the petitioner shall include a certification, signed by the petitioner or counsel, stating the witness's name, address, date of birth and substance of testimony. . . . The certification . . . shall . . . specify the basis of the petitioner's information regarding the witness and the petitioner's efforts to obtain the witness's signature. . . .
>
> (iii) Failure to substantially comply with the requirements of this paragraph shall render the proposed witness's testimony inadmissible.

42 Pa.C.S.A. § 9545(d)(1)(i)-(iii).

Again, we observe Bush's PCRA petition did not include any affidavit or certification pertaining to Sanders or any firearms expert, as required for an evidentiary hearing. *See* 42 Pa.C.S.A. § 9545(d)(1)(i)-(ii). We incorporate our above discussion of each of Bush's issues, and affirm the PCRA court's decision that no evidentiary hearing was warranted. For the foregoing reasons, we affirm the PCRA court's dismissal of Bush's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/10/2024